**In re Petition for DISCIPLINARY ACTION AGAINST Jeffrey R. BESIKOF, an Attorney at Law of the State of Minnesota.**

No. C0–85–1927.

Supreme Court of Minnesota.

April 17, 1992.

William J. Wernz, Director, Lawyers Professional Responsibility Bd., Martin A. Cole, Asst. Director, St. Paul, for appellant.

Rick E. Mattox, Eagan, for respondent.

OPINION

PER CURIAM.

By order dated April 30, 1990, the Eighth Circuit Court of Appeals suspended Jeffrey R. Besikof from practice for 60 days for

---

lack of diligence in representing a client in a criminal appeal. At that court's direction, a copy of the order was sent to the clerk of this court, who forwarded it to the director of the Office of Lawyers Professional Responsibility. By petition dated June 11, 1991, the director charged respondent with misconduct for displaying a lack of diligence and promptness in representing a client, in violation of Rule 1.3, Minn.R.Prof.Conduct.

After a hearing on October 3, 1991, the referee accepted the director's findings of fact, conclusions and recommendations that respondent (1) be suspended for 60 days; (2) be required to successfully complete the written examination on professional responsibility within one year; (3) be required to petition for reinstatement by affidavit; and (4) thereafter be placed on supervised probation for two years. Pursuant to Rule 14(e), Rules on Lawyers Professional Responsibility (RLPR), respondent filed a certificate of transcript. He challenges the findings, conclusions and recommendations.

We order that respondent (1) be suspended from the practice of law for not less than 30 days; (2) be required to notify all existing clients of the suspension, as set out in Rule 26, RLPR; (3) be required to petition for reinstatement by affidavit pursuant to Rule 18(f) RLPR; (4) be placed on supervised probation for two years; and (5) pay costs of $750.

■ Respondent was admitted to practice law in May 1978. At the time the issues in this case arose, he was a sole practitioner in West St. Paul, practicing almost exclusively in criminal defense. On September 8, 1989, the Eighth Circuit Court of Appeals appointed respondent to represent Eric Ford in his appeal of a drug conviction. The Eighth Circuit issued a briefing schedule, which required briefs by November 27, 1989, but at respondent's request that deadline was changed to December 4, 1989, to accommodate respondent's planned office move. Respondent testified that he was not too concerned about the deadline because of his belief that the Eighth Circuit routinely accepted late briefs.

In fact, respondent never filed a brief and in February 1990 withdrew from the case at the suggestion of the Eighth Circuit staff, which had received complaints from Ford. Respondent's explanation throughout the Ford case and during this disciplinary proceeding has been that he never received the trial transcript from the St. Louis attorney who represented Ford at trial and for post-trial motions. At respondent's hearing, the director introduced an affidavit from the trial attorney stating that after receiving the five-volume transcript on or about October 20, 1989, he had his secretary send it to respondent, with a cover letter, by commercial shipper. The cover letter was introduced at the hearing, but respondent testified he never received any box containing the transcript. Respondent's former secretary testified that she recalled receiving a box, but did not open it. Respondent introduced a shipping tracer form that showed something was sent from the St. Louis attorney to respondent on October 23, 1989, but the tracer indicated that what was sent was an overnight letter weighing less than 1 pound for a charge of $8.50.

The record also showed several telephone calls from October 19 to December 7, 1989, from respondent's office to the trial attorney's office and to the federal court complex in St. Louis. Most of these calls were placed by respondent's secretary, at respondent's direction. Also introduced were a letter from respondent to Ford, and one draft letter each from respondent to the trial attorney and the Eighth Circuit, neither of which ever was mailed. Of the letters and telephone calls, none occurred between November 8 and December 7, 1989.

Meanwhile, Ford had written to the Eighth Circuit on October 21, 1989, asking that respondent be removed from the case. On November 15, Ford wrote to the Eighth Circuit and respondent asking that his appeal be withdrawn and his sentence reduced. On or about December 7, respondent wrote Ford and stated that he was not

doing anything in the case because he still had not received the transcript. After respondent failed to satisfactorily explain his conduct in the Ford matter, the Eighth Circuit suspended him for 60 days. His request for reconsideration, with a belated explanation, was denied.

### Previous discipline

In December 1985 respondent stipulated to two years of unsupervised private probation for neglect of a client matter. In May 1987 before that unsupervised probation period had expired, respondent admitted to additional misconduct when he failed to promptly return the unearned portion of a retainer fee and neglected a client matter. He stipulated to changing the conditions of his prior probation to become supervised, with a two-year extension. In August 1988 respondent stipulated to a lack of competence in two criminal matters and lack of staff supervision. He agreed to adopt office procedures that would ensure proper diligence in communication with clients and to take course work in criminal law, professional responsibility and trial practice.

### Misconduct

"A lawyer shall act with reasonable diligence and promptness in representing a client." Minn.R.Prof.Conduct 1.3. "Perhaps no professional shortcoming is more widely resented than procrastination. A client's interests often can be adversely affected by the passage of time or the change of conditions." *Id.* Comment— 1985. "Allegations of professional misconduct must be proved by 'fully clear and convincing evidence.'" *In re McGrath*, 462 N.W.2d 599, 600 (Minn.1990) (quoting *In re Ruhland*, 442 N.W.2d 783, 785 (Minn. 1989)).

This issue requires little discussion. It is undisputed that respondent did nothing on the Ford matter from November 8 to December 7, 1989, despite being fully aware that his brief was due at the Eighth Circuit by December 4. That, in and of itself, is clear and convincing evidence that respondent did not exercise reasonable diligence. We find respondent's claim about the routine granting of extensions unpersuasive, particularly when respondent took no action to request an extension before the deadline lapsed.

Moreover, even the few steps that respondent took were wholly inadequate. Respondent defends his conduct by pointing out that he delegated certain duties in the Ford matter to his secretary, and that her phone calls did not produce results. It is not enough for an attorney to say the secretary made a phone call and nothing happened. At some point, respondent had to accept responsibility and call personally to track down the transcript. He never did that, even though this was an important case, the first federal case he ever had taken at the appellate level, and even though it was obvious that previous methods of seeking the transcript had failed. Under those circumstances, respondent's decision to stand by and do nothing can hardly be viewed as anything except a lack of diligence.

### Mitigating factors

"It is the [r]espondent's obligation to prove the mitigating circumstances caused the misconduct by clear and convincing evidence. But all evidence regarding extenuating circumstances will be considered in determining the extent of the disciplinary action to be taken." *In re Sahr*, 444 N.W.2d 290, 292 (Minn.1989) (citations omitted). In mitigation of his misconduct, respondent argues, among other things, that (1) his client was not harmed; (2) he already has been disciplined by the Eighth Circuit; (3) he was inexperienced with Eighth Circuit procedures and was not sure how to deal with the transcript problem; (4) much or even all of his lack of diligence resulted from reasonable reliance on his secretary; and (5) respondent was preoccupied by his own legal problems at the time this case arose.

We find all of these claims to be without merit, but we believe that three deserve special mention. First, we dispute respondent's claim that his client was not harmed because he voluntarily dropped his appeal. The appeal was dropped because Ford lost

confidence in respondent's ability to pursue it, not for some independent reason.

Second, the extensive evidence respondent introduced on his secretary's performance does not mitigate his misconduct. An attorney has a duty to properly train and supervise his or her support staff. *See* Minn.R.Prof.Conduct 5.3(b) and (c). And respondent, under terms of his most recent prior discipline, was under specific instructions to implement office procedures that would ensure proper diligence in communication with clients. Obviously, those procedures were not in place during the Ford matter. The responsibility for that failure falls to respondent, not his staff.

Third, respondent argues that we should find mitigation in certain personal and professional problems that arose around the time of the Ford case. Respondent's purchase of a combination house and office had fallen through when the sellers backed out. Respondent had given notice to vacate his current office and the landlord had signed a new tenant, so respondent was left with nowhere to go. Respondent argues that he was required to spend time investigating the facts of the canceled sale and to research and pursue his legal remedies. In effect, respondent is arguing that he should be able to put aside clients' legal matters to pursue his own. We find that argument appalling and categorically reject it.

### Appropriate discipline

■ Sanctions are not imposed to punish the attorney, but to protect the public, guard the administration of justice, and to deter further misconduct. *In re Jensen*, 418 N.W.2d 721, 722 (Minn.1988) (citation omitted). Although great weight is afforded "to findings of fact and conclusions * * * [and] disciplinary recommendations made by the referees, the final responsibility for determining appropriate discipline rests solely with this court." *In re Schmidt*, 402 N.W.2d 544, 545 (Minn.1987). In determining appropriate discipline, "this court must weigh: (1) the nature of the misconduct; (2) the cumulative weight of the disciplinary rule violations; (3) the

harm to the public; and (4) the harm to the legal profession." *In re Isaacs*, 406 N.W.2d 526, 529 (Minn.1987) (citation omitted).

Respondent's disciplinary history involves neglect of client matters. This case involves a lack of diligence in pursuing a client's case. In sum, respondent's misconduct represents a continuing pattern of paying inadequate attention to his clients' interests and a failure to develop a systematic means of office management to avoid such problems. As the comments to Rule 1.3 suggest, that undermines public confidence in the legal profession, which harms the public, the legal profession and the justice system. Such misconduct must be deterred.

The referee adopted the director's recommendation that respondent be suspended for 60 days. Respondent argues for, at most, a public reprimand. After a careful review of the record, respondent's disciplinary history, an examination of sanctions issued for similar misconduct, and the application of the *Isaacs* factors, we conclude that a suspension is in order. The director cites several cases in support of his recommendation that respondent be suspended for 60 days. But after review of those cases, we agree with respondent that the misconduct in those cases involved lack of diligence plus other very serious violations that are not present here.

Thirty days is an appropriate suspension period for respondent. And that suspension is to begin 10 days after this opinion is filed. Respondent is required to notify his clients of the suspension, petition for reinstatement by affidavit, be placed on supervised probation for two years, and pay costs of $750.

It is so ordered.