In re Petition for DISCIPLINARY AC-
TION AGAINST Alan J. ALBRECHT,
a Minnesota Attorney, Registration
No. 191826.

No. A08–2082.

Supreme Court of Minnesota.

March 18, 2010.

532

Martin A. Cole, Director, Cassie Hanson, Senior Assistant Director, Office of Lawyers Professional Responsibility, St. Paul, MN, for petitioner.

Alan J. Albrecht, Brooklyn Center, MN, pro se.

## OPINION

PER CURIAM.

On November 26, 2008, the Director filed a petition for disciplinary action against Alan J. Albrecht. The petition alleged two counts. In the first, the Director alleged that Albrecht had shown a pattern of incompetence and lack of diligence that violated Minn. R. Prof. Conduct

1.1,[1] 1.3,[2] 3.4(c),[3] and 8.4(d).[4] In the second count, the Director alleged that Albrecht's issuance of a non-negotiable check and his failure to communicate regarding that check violated Minn. R. Prof. Conduct 8.4(d).

After a hearing on the Director's allegations, the referee we appointed found that Albrecht had committed misconduct, and recommended that Albrecht be indefinitely suspended from the practice of law for a minimum of two years. Albrecht appealed the referee's recommendation and ordered a transcript of the referee's proceedings. *See* Rule 14(e), Rules on Lawyers Professional Responsibility (RLPR) (providing that the referee's findings of fact and conclusions are conclusive unless one of the parties orders a transcript of the proceedings). Albrecht contests the referee's factual findings with respect to several mitigating and aggravating factors, argues that the referee failed to consider several relevant mitigating factors, and challenges the referee's recommended discipline as "arbitrary." He argues that a three-month suspension, with a possible requirement of a reinstatement petition, would be more appropriate discipline.

Albrecht graduated from law school in 1988 and practiced as a lawyer in various capacities for several years. In 1993, he formed the law firm of Albrecht and Associates, Ltd. Since starting his own firm, Albrecht has been admonished ten times and publicly disciplined four times. The history of those proceedings up until 2003 is set forth at some length in Albrecht's most recent public discipline and will not be repeated here. *See In re Albrecht* (*Albrecht IV*), 660 N.W.2d 790, 792–93 (Minn. 2003); *see also In re Albrecht* (*Albrecht III*), 577 N.W.2d 712 (Minn.1998); *In re Albrecht* (*Albrecht II*), 573 N.W.2d 89 (Minn.1998); *In re Albrecht* (*Albrecht I*), 565 N.W.2d 704 (Minn.1997). In 2003, Albrecht was disciplined twice. In *Albrecht IV,* Albrecht was disciplined for misconduct in matters involving three clients. *See* 660 N.W.2d at 793. The misconduct included neglect of client affairs, lack of communication, and filing a frivolous lawsuit. *See id.* at 793–95. As part of his discipline, he was suspended for 90 days and placed on supervised probation for two years following his reinstatement. *See id.* at 797. He was privately disciplined again in September of the same year for failing to provide timely notice to his clients of his suspension as required by Rule 26, RLPR.

The facts giving rise to the current disciplinary petition are largely uncontested. On June 21, 2005, a client retained Albrecht to represent her in pursuing bankruptcy. The client had been self-employed for thirty years and had accumulated more than $90,000 in credit card debt. Her only retirement asset was a structured settlement that she had received in connection with her husband's death in a car accident years earlier. The client testified before the referee that she told Albrecht that it was very important to her to keep the structured settlement and that she did not

---

**1.** Minn. R. Prof. Conduct 1.1 provides: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation."

**2.** Minn. R. Prof. Conduct 1.3 provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

**3.** Minn. R. Prof. Conduct 3.4(c) provides: "A lawyer shall not ... (c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists."

**4.** Minn. R. Prof. Conduct 8.4(d) provides: "It is professional misconduct for a lawyer to ... (d) engage in conduct that is prejudicial to the administration of justice."

want to file for bankruptcy unless that asset would be protected. She also testified that she had been approved for a home equity loan and would likely have taken out a loan on her house, rather than filing for bankruptcy, if that were the only way to protect the structured settlement. She testified that Albrecht indicated multiple times that the structured settlement "wouldn't be a problem."

Albrecht filed a bankruptcy petition in August 2005 on behalf of the client. He did not review the structured settlement agreement itself. In the petition, Albrecht listed the structured settlement as an exempt asset from the bankruptcy estate, citing the exemption for insurance policies. The bankruptcy trustee objected to this exemption and, when Albrecht would not stipulate that the structured settlement was not exempt, the trustee filed a motion with the bankruptcy court formally objecting to the claimed exemption. In November 2005, the bankruptcy court rejected Albrecht's claim that the structured settlement was exempt from the bankruptcy estate. Albrecht told the client he would bring a motion to vacate this order and would continue seeking to exempt this asset. He took no more legal action in this case until June 2006.

In the meantime, in March 2006, the client received her annual structured settlement check and asked Albrecht if she could cash the check and retain the proceeds. Albrecht told her that she could. Albrecht received letters from the trustee's counsel on March 7 and 20, requesting that he see to it that the funds were turned over to the trustee. The client also called Albrecht several times to express her concern about the settlement payments after receiving copies of these letters in the mail.

On May 1, the trustee's counsel brought a motion for the recovery of the annual structured settlement payment and also sought attorney fees of $800 for the cost of bringing the motion. On June 11, Albrecht filed a motion to vacate the court's November 2005 order denying the requested exemption for the structured settlement payment. The court denied the motion as untimely and further found that Albrecht raised no meritorious defenses to the trustee's May 1 motion. Initially, the court ordered the client to pay the $800 in attorney fees for the trustee's cost of bringing the motion, but the court subsequently issued a second order requiring Albrecht to pay the $800 instead. Although it is somewhat unclear from the record, it appears that this change was due to the intervention of a lawyer friend of the client, who stepped in to help the client after she became frustrated with the quality of Albrecht's legal representation. Albrecht subsequently paid the $800.

Albrecht made no offer to refund the client the $700 fixed fee she had paid him when she retained him to take her case. In 2008, the client filed a conciliation court claim against him. After receiving her conciliation court complaint, Albrecht sent the client a $700 check, dated June 6, 2008, and drawn on his business account. The bank refused to cash the check because of insufficient funds. The client contacted Albrecht and testified that, although he told her he would get back to her the next day, he failed to do so and she was unable to reach him again. The client was finally able to negotiate the check on June 20, 2008.

In his conclusions of law, the referee determined that Albrecht's conduct violated Minn. R. Prof. Conduct 1.1, 1.3, 3.4(c), and 8.4(d). The referee also found that there were no mitigating factors in Albrecht's case and that the harm suffered by the client and Albrecht's extensive disciplinary history were both aggravating

factors. As discipline, the referee recommended a minimum two-year suspension.

## I.

■■■ In disciplinary proceedings, the Director must prove the respondent's violation of the Rules of Professional Conduct by clear and convincing evidence. *In re Grigsby,* 764 N.W.2d 54, 60 (Minn.2009). Because Albrecht ordered a transcript of the referee's hearing, the referee's findings and conclusions of law are not binding on our court. *See In re Wentzell,* 656 N.W.2d 402, 405 (Minn.2003). Although not binding, we give "great deference to a referee's findings and will not reverse those findings unless they are clearly erroneous, especially in cases where the referee's findings rest on disputed testimony or in part on respondent's credibility, demeanor, or sincerity." *Id.* We must be " 'left with the definite and firm conviction that a mistake has been made' " to conclude that a referee's findings were clearly erroneous. *Id.* (quoting *In re Strid,* 551 N.W.2d 212, 215 (Minn.1996)). Where "the referee's findings are supported by the evidence, they will be upheld." *In re Erickson,* 653 N.W.2d 184, 189 (Minn. 2002). Albrecht does not dispute the referee's findings of fact regarding what misconduct occurred and the referee's conclusions that this misconduct violated the Rules of Professional Conduct. Albrecht does, however, challenge the referee's findings of fact and conclusions of law with respect to aggravating and mitigating factors.

## A.

Albrecht first argues that it was clearly erroneous for the referee to find that the following were not mitigating factors for his misconduct: his adjustment disorder and his treatment for the disorder, and the length of time since his last instance of misconduct causing harm to a client. Next, Albrecht argues that he produced evidence of several additional mitigating factors that were not addressed by the referee, including Albrecht's good reputation in the legal community and the favorable results he achieved in complex matters; his remorse for his misconduct; and his cooperation with the Director. Finally, Albrecht argues that, although the referee noted his involvement in community service, it was unclear whether the referee treated it as a mitigating factor and thus, to the extent the referee failed to address whether it was a mitigating circumstance, this was also clearly erroneous. *See In re Grigsby,* 764 N.W.2d at 60 ("We review the lack of particular factual findings by the referee for clear error."). We examine each of these claims in turn.

■■■ First, Albrecht argues that it was clearly erroneous for the referee to reject his argument that his adjustment disorder was a mitigating factor. To establish his adjustment disorder as a mitigating factor, Albrecht was required to establish, by clear and convincing evidence, that he met all five of the factors set forth in *In re Weyhrich:* (1) that he has a severe psychological problem; (2) that the psychological problem was the cause of the misconduct; (3) that he is undergoing treatment and is making progress to recover from the psychological problem which caused or contributed to the misconduct; (4) that the recovery has arrested the misconduct; and (5) that the misconduct is not likely to recur. 339 N.W.2d 274, 279 (Minn.1983).

The referee concluded that Albrecht failed to establish any of the *Weyhrich* factors by clear and convincing evidence and thus rejected the argument that Albrecht's adjustment disorder is a mitigating factor. Specifically, the referee found that Albrecht suffered from a serious, but

not *severe*, psychological condition. The referee next found that Albrecht failed to establish that his adjustment disorder caused the misconduct. Finally, the referee concluded that Albrecht had failed to establish that he is making progress to recover from his psychological disorder, that the recovery has arrested the misconduct, or that misconduct is unlikely to recur.

An examination of the record confirms that the evidence supports the referee's findings as to Albrecht's adjustment disorder. We have distinguished between "serious" and "severe" conditions in the past and have found that only severe conditions are a mitigating factor in an attorney disciplinary proceeding. *See In re Hanvik*, 609 N.W.2d 235, 240 (Minn.2000) (rejecting the argument that a serious disorder is the same as a severe disorder and upholding the referee's finding that respondent's moderate depression was not a mitigating factor). The referee's finding that Albrecht's adjustment disorder was serious, but not severe, is supported by the testimony of Albrecht's therapist, who testified that Albrecht's adjustment disorder is "moderate" in severity.

The referee's finding that Albrecht did not establish that his adjustment disorder caused the misconduct is also not clearly erroneous. Albrecht argues that his therapist testified, without contradiction, that, when Albrecht is faced with failure, he emotionally "floods" making it impossible for him to respond appropriately. But there was additional evidence in the record to support the referee's determination that Albrecht's adjustment disorder did not cause his misconduct. In particular, the referee noted that the main stressor listed in his therapist's notes was the Director's pending investigation. That investigation did not begin, however, until about three years after Albrecht's misconduct. The

referee therefore did not err in concluding that Albrecht failed to establish by clear and convincing evidence the necessary causal link between the disorder and the misconduct.

Finally, the referee's findings that Albrecht failed to establish that he is making progress to recover from his psychological disorder, that the recovery has arrested the misconduct, and that misconduct is unlikely to recur are also not clearly erroneous. At the time of the hearing, Albrecht had been in therapy for his adjustment disorder for less than five months and his therapist testified that Albrecht would need at least six to nine months more of therapy. The referee also found that Albrecht's motives in seeking treatment were questionable. *See In re Getty*, 452 N.W.2d 694, 697 (Minn.1990) ("The referee was free to disregard [respondent's] testimony if he found it was not credible."). Given Albrecht's long history of similar misconduct and client neglect, his potentially questionable motives in seeking treatment, and the short duration of his therapy, we conclude it was not clearly erroneous for the referee to find that Albrecht failed to establish by clear and convincing evidence that he was making progress recovering from his disorder, that his recovery had stopped the misconduct, or that misconduct is unlikely to recur.

■ Second, Albrecht argues that it was clearly erroneous for the referee to fail to consider the fact that it has been eight and a half years since his last act of misconduct that resulted in harm to a client and that, during that time, he has served nearly 700 clients with no client raising an ethical complaint. This argument is not persuasive either factually or legally.

Factually speaking, although Albrecht is correct that the misconduct for which he was disciplined in the 2003 disciplinary

proceedings occurred in September 2000 (over eight years before the instant petition for discipline was filed), this argument does not give the full picture of Albrecht's recent disciplinary history. *See Albrecht IV,* 660 N.W.2d at 793–94. In 2003, Albrecht was suspended from the practice of law for ninety days and then placed on probation for two years following his reinstatement. *Id.* at 797. Later that same year, Albrecht was admonished for his failure to comply with the requirement that he notify his clients of his temporary suspension from the practice of law. Although arguably not directly harmful to clients, this is also client-related misconduct. Moreover, because Albrecht was on supervised probation until October 2005, some of Albrecht's misconduct with respect to the case at issue here actually occurred while he was still on supervised probation for his earlier misconduct and most of the rest of it occurred shortly thereafter.[5] As we have explained in past cases, the fact that misconduct occurs while an attorney is already on probation suggests that a more serious sanction may be needed to prevent such misconduct from recurring. *See In re McCoy,* 422 N.W.2d 731, 733–34 (Minn.1988) (explaining the probation was "an ineffective rehabilitation measure" in respondent's case because his pattern of misconduct continued while he was on probation).

Furthermore, Albrecht has not shown that the referee's decision not to take the time gap into account was clearly erroneous. Albrecht does not cite any cases for the proposition that the referee was obliged to take the length of time between his misconduct into account in determining what sanction would be appropriate, and we have treated an attorney's disciplinary history as an aggravating factor in other cases despite a time lapse as long as this one or longer. *See In re Bernard,* 534 N.W.2d 272, 276–77 (Minn.1995) (finding that, although about ten years had passed between disciplinary proceedings, the respondent's repeated misconduct was an aggravating factor). Thus, we conclude the referee's failure to treat the time gap between Albrecht's misconduct as a mitigating factor was not clearly erroneous.

■ Third, Albrecht argues that it was clearly erroneous for the referee to fail to make findings regarding evidence of Albrecht's good reputation in the legal community and the quality representation he has provided in complex bankruptcy matters in the past. At the hearing, Albrecht presented the testimony of three witnesses as evidence of these factors. Albrecht points out that, in past disciplinary proceedings, the fact that an attorney in a disciplinary proceeding has an "extensive, busy practice" and has obtained "excellent results" for "sometimes difficult clients" has been treated as a mitigating factor. *In re Hartke,* 529 N.W.2d 678, 683 (Minn. 1995). We have also treated an attorney's "reputation in the legal community for integrity and hard work" as a mitigating factor. *See In re Montpetit,* 528 N.W.2d 243, 245 n. 1 (Minn.1995).

But the fact that the referee *may* treat an attorney's good reputation or past good results in difficult cases as mitigating fac-

---

**5.** Albrecht's representation of the client began in June 2005. Albrecht's probation ended in October 2005. While most of Albrecht's misconduct in the bankruptcy case occurred after his probation had ended, at least two instances of misconduct occurred before or at the time Albrecht filed the bankruptcy petition in August 2005. The referee found that Albrecht had acted incompetently in his representation of the client in violation of Minn. R. Prof. Conduct 1.1 when he advised her that her structured settlement would be exempt during their initial meeting and when he filled out her bankruptcy petition without double-checking the applicable statutes.

tors does not mean that it is clearly erroneous for the referee to choose not to do so. We addressed a similar argument in *In re Wentzel,* 711 N.W.2d 516 (Minn. 2006). In that case, the respondent argued that we should find two additional mitigating factors that the referee did not list in his findings.[6] *Id.* at 520 n. 1. While we acknowledged that both of those factors had been treated as mitigating factors in past cases and that the respondent had presented evidence of these factors through his own testimony and that of his character witnesses, we found it was not clearly erroneous for the referee to fail to make findings on these factors. *Id.* We explained that "in light of the deference given to the referee's findings and because finding these factors requires an assessment of the credibility of [respondent] and the other two witnesses, the referee's decision not to find these additional mitigating factors was not clearly erroneous." *Id.*

Similarly, in this case, the only evidence that Albrecht offers of his reputation in the legal community and the excellent results he has obtained in difficult cases is the testimony of three character witnesses. The referee is in the best position to assess the relative weight to give to witnesses' testimony. *Id.* Because questions involving Albrecht's reputation and the quality of his legal work depend so heavily on an evaluation of the credibility of these character witnesses, we conclude that Albrecht has not demonstrated that it was clearly erroneous for the referee not to list Albrecht's good reputation in the legal community or the good results he has achieved for past clients as mitigating factors.

■ Fourth, Albrecht argues that the referee clearly erred in failing to address whether Albrecht's remorse for his misconduct was an additional mitigating factor. Albrecht expressed his remorse over his handling of the client's case multiple times throughout the disciplinary hearing. Whether an attorney is remorseful for his misconduct is an important issue in an attorney discipline case, and the referee erred in not addressing it. *In re Farley,* 771 N.W.2d 857, 862 (Minn.2009) ("We conclude that examination of remorse is an important issue and that the referee erred in failing to address it."). Although the referee was not obligated to believe Albrecht's testimony or to treat Albrecht's expressions of remorse as a mitigating factor, our case law obligates the referee to make some factual finding regarding Albrecht's alleged remorse. *See In re Hanvik,* 609 N.W.2d at 239–40 (concluding that the referee's finding that the respondent was not genuinely remorseful, despite his testimony to the contrary, was supported by the record). As we did in *In re Farley,* we also conclude in this case that the referee erred in failing to expressly address in his findings the question of Albrecht's remorse. *See* 771 N.W.2d at 862.

■ Fifth, Albrecht cites his cooperation with the Director's disciplinary investigation as a mitigating factor and argues that the referee's failure to address this factor was clearly erroneous. Albrecht's cooperation with the Director's investigation was required by Rule 25, RLPR.[7] We

---

6. The two mitigating factors that Wentzel argued the referee should have addressed in his findings were: Wentzel's "good character and reputation for honesty" and his plan "to associate with a law firm to ensure [misappropriation of client funds] never happens again." *See In re Wentzel,* 711 N.W.2d at 520 n. 1.

7. Rule 25 provides: "It shall be the duty of any lawyer who is the subject of an investigation or proceeding under these Rules to cooperate with the District Committee, the Director, or the Director's staff, the Board, or a Panel, by complying with reasonable requests...."

have repeatedly stated that mere compliance with the rules of professional conduct is not a mitigating factor in attorney discipline cases. *See In re Moulton,* 721 N.W.2d 900, 906 (Minn.2006) ("In that cooperation with disciplinary proceedings is required by Rule 25 of our Rules on Lawyers Professional Responsibility ... we do not believe [it] qualif[ies] as [a] mitigating factor[ ]."); *In re Grigsby,* 764 N.W.2d at 61 ("Similarly, compliance with the Rules of Professional Conduct is not a mitigating factor: it is required of all lawyers in the state."). The referee's failure to include Albrecht's compliance with the Director's disciplinary investigation as a mitigating factor therefore was not clearly erroneous.

■ Finally, Albrecht argues that the referee failed to treat his pro bono work as a mitigating factor and that this was clearly erroneous. As a general rule, significant pro bono work and contributions to the community at large have been considered as mitigation for misconduct. *See In re Lochow,* 469 N.W.2d 91, 96 (Minn.1991) (listing respondent's pro bono family law work and his volunteer work with the United Way, the homeless, and multiple sclerosis organizations as a mitigating factor). Albrecht argues that his volunteer work with Mock Trial, the Hamline Law School mentor program, the Father's Resource Center, the Hennepin County Misdemeanor Defense Panel, the Low Income Family Law Practice, the Volunteer Lawyer's Network, and Chrysalis should be considered in mitigation of any discipline imposed.

From the referee's findings of fact and conclusions of law, it is unclear whether the referee considered Albrecht's volunteer work as a mitigating factor. The referee lists Albrecht's volunteer work in the section discussing mitigating factors, but does not conclude that this volunteer work constituted a mitigating factor. *See*

*In re Rooney,* 709 N.W.2d 263, 271 (Minn. 2006) ("An attorney's pro bono legal work, volunteer activities, and good character can also be mitigating factors in misappropriation cases."). Even though the referee should have been more clear as to whether he was treating Albrecht's community service as a mitigating factor, this lack of clarity does not mean that the referee erred in not concluding that Albrecht's pro bono work was in fact a mitigating factor. *See In re Hanvik,* 609 N.W.2d at 239 (upholding a referee's finding that the respondent's pro bono activity was not a mitigating factor because he did no more pro bono work "than is generally expected of any attorney"). While Albrecht provides a long list of volunteer activities that he has participated in, the record contains very little detail about the extent of his involvement in each or the number of hours per year he generally spends doing pro bono legal work. On this record, we cannot say that Albrecht has done more "than is generally expected of any attorney" and we therefore conclude that the referee did not err in failing to find Albrecht's pro bono work a mitigating factor. *See In re Hanvik,* 609 N.W.2d at 239.

### B.

■ In addition to challenging the referee's treatment of potential mitigating factors, Albrecht argues that it was clearly erroneous for the referee to treat financial harm to the client as an aggravating factor in this case. Albrecht points out that, although the client lost structured settlement payments that were worth approximately $28,000, she had approximately $96,000 of credit card debt discharged. Albrecht also introduced expert testimony to suggest that one of the client's creditors would have likely tried to garnish her structured settlement anyway, even if she had not filed for bankruptcy.

Although Albrecht is correct that the overall outcome of the bankruptcy proceeding was not necessarily negative for the client, there is expert testimony in the record to support the referee's finding that, but for Albrecht's advice, the client could have maintained control over her structured settlement agreement for a few months longer, enough at least to receive one more payment. In addition, because of Albrecht's non-meritorious motion to vacate, the client was exposed to an $800 penalty. While Albrecht ultimately paid this penalty, the client still suffered initial prejudice from the order and was compelled to ask another attorney to intervene on her behalf. Given that there is evidence in the record to support the referee's finding that the client was financially harmed by Albrecht's misconduct, we conclude the referee's finding that financial harm to the client was an aggravating factor in this case is not clearly erroneous.

## II.

We turn next to consideration of the question of the appropriate discipline. The referee recommends that Albrecht be indefinitely suspended from the practice of law in Minnesota and ineligible to petition for reinstatement for a minimum of two years. The Director urges that we adopt the referee's recommendation. Albrecht argues that the recommended discipline is "unduly harsh." [8]

■■■■ As we have explained, "[t]he purpose of disciplinary sanctions for professional misconduct is not to punish the

attorney, but rather 'to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys.'" *In re Vaught,* 693 N.W.2d 886, 890 (Minn.2005) (quoting *In re Oberhauser,* 679 N.W.2d 153, 159 (Minn.2004)). Although we give significant weight to the referee's recommendation of discipline, we serve as "the sole arbiter of the discipline to be imposed." *In re Singer,* 541 N.W.2d 313, 315 (1996). In determining the appropriate discipline, we consider four factors: "1) the nature of the misconduct, 2) the cumulative weight of the violations of the rules of professional conduct, 3) the harm to the public, and 4) the harm to the legal profession." *Id.* at 316. We will consider both the aggravating and the mitigating circumstances of the particular case in determining the appropriate discipline. *In re Vaught,* 693 N.W.2d at 890. We also consider similar cases in an effort to impose consistent discipline. *In re Bishop,* 582 N.W.2d 261, 263 (Minn.1998).

■■■■ The misconduct in this case involves neglect of a client matter, incompetent legal representation, advising a client to act contrary to a court order, and conduct prejudicial to the administration of justice.[9] The Director argues that Albrecht has displayed continued neglect of client matters and that such repeated neglect of client matters has been punished with indefinite suspension in the past. *See In re Geiger,* 621 N.W.2d 16, 23 (Minn. 2001) ("Even in cases where an attorney is

---

**8.** In opposing the referee's recommended discipline, Albrecht places great reliance on the referee's use of the term "arbitrary" in explaining his decision as to what discipline to recommend. This was an unfortunate turn of phrase, but we bear the ultimate burden of setting the appropriate level of discipline, not the referee. *See In re Franke,* 345 N.W.2d 224, 228 (Minn.1984) ("The final responsibili-

ty for determining appropriate discipline rests solely with this court."). We do not view the sanctions imposed here as "arbitrary."

**9.** The referee found that Albrecht violated Minn. R. Prof. Conduct 1.1 (competence), 1.3 (diligence), 3.4(c) (knowing disobedience of court order), and 8.4(d) (conduct prejudicial to the administration of justice).

involved in only one instance of client neglect, when that neglect is combined with other violations we have often suspended or disbarred the attorney."); *In re Clements*, 502 N.W.2d 213, 215 (Minn.1993) ("Repeated neglect of client matters, misrepresentations, and failure to communicate with clients typically warrant indefinite suspension."); *In re Merlin*, 572 N.W.2d 737, 741 (Minn.1998); *In re Levenstein*, 438 N.W.2d 665, 668 (Minn.1989) ("Cases involving continued or repeated neglect of client matters have traditionally warranted severe sanctions. Absent mitigating circumstances, typically we have ordered indefinite suspension."). We agree. For example, in *In re McCoy*, we indefinitely suspended the lawyer for a minimum of eighteen months for neglecting client matters while he was already on probation. 422 N.W.2d at 732–34. Albrecht's case is similar to *In re McCoy* in that each case involves neglect of client matters and misconduct that occurred during the attorney's probationary period. *See id.*[10]

In determining what sanction should be imposed for Albrecht's misconduct, we also consider the cumulative weight of all the violations in this case. *See In re Nelson*, 733 N.W.2d 458, 464 (Minn.2007) (discussing Nelson's numerous disciplines in deciding the cumulative weight of his violations of the Rules of Professional Conduct). Even though each of Albrecht's violations if considered alone might not merit severe punishment, the cumulative weight of these violations does. *See In re Isaacs*, 451 N.W.2d 209, 212 (Minn.1990) ("Severe discipline may be imposed, given the cumulative weight of the violations, even if

no charge singularly would so warrant."). Moreover, Albrecht's current misconduct is similar to that for which he has been disciplined in the past. Three out of Albrecht's last four public disciplines involved multiple instances of client neglect. *See In re Rhodes*, 740 N.W.2d 574, 580 (Minn.2007) ("We generally impose 'more severe sanctions when the current misconduct is similar to misconduct for which the attorney has already been disciplined.'" (quoting *In re Brooks*, 696 N.W.2d 84, 88 (Minn.2005))); *In re Isaacs*, 451 N.W.2d at 212 (explaining that repeated instances of similar misconduct are an aggravating factor in determining the appropriate discipline).

We also conclude that Albrecht's misconduct harmed the public. The referee found that the client was harmed, financially and emotionally, by Albrecht's incompetent legal representation in her bankruptcy matter and his lack of diligence. Because of Albrecht's misconduct, the client was not able to make a fully informed decision about whether to file for bankruptcy, disobeyed a court order, and had to seek help from another attorney to respond to the bankruptcy court's order ordering her to pay $800 in attorney fees. We have treated similar misconduct as harmful to the public. *See In re Redburn*, 746 N.W.2d 330, 338 (Minn.2008) ("[R]egardless of whether an attorney's misconduct 'jeopardize[s] the client's position with respect to a claim, a lawyer's failure to communicate with the client and misrepresentations regarding the status of a pending case are intensely frustrating to the client, reflect adversely on the bar, and are

---

**10.** Albrecht's disciplinary history is significantly longer than that of McCoy, whose history seems to have consisted of a public reprimand followed by two years of probation. *See In re McCoy*, 422 N.W.2d. at 732; *see also Albrecht IV*, 660 N.W.2d at 796 ("Engaging in misconduct while on probation similar to that for which he had been previously disciplined indicates that Albrecht has failed to show a renewed commitment to professional ethics.").

destructive of public confidence in the legal profession.'" (quoting *In re Shaughnessy*, 467 N.W.2d 620, 621 (Minn.1991))). Not only did Albrecht's procrastination and neglect harm the client, such client neglect generally "undermines public confidence in the legal profession, which harms the public, the legal profession and the justice system." *In re Keate*, 488 N.W.2d 229, 235 (Minn.1992) (quoting *In re Besikof*, 483 N.W.2d 80, 83 (Minn.1992)).

Albrecht's misconduct also harmed the legal profession because he instructed his client to ignore the order of a tribunal and thus compelled opposing counsel to seek an order to force the client to turn over her structured settlement check. *See In re Franke*, 345 N.W.2d at 229 (finding harm to the legal profession where the respondent would not turn over the required documents without court orders and delays were common). By informing the client that she could cash her settlement check, despite a court order and two letters from the trustee's counsel to the contrary, Albrecht forced the trustee's counsel to bring a motion that would not have been necessary if Albrecht had properly advised his client. Albrecht's neglect of the client's case therefore caused the needless expenditure of judicial resources and the resources of opposing counsel, which harmed the legal profession.

In determining what sanction to impose, we also look to the relevant aggravating and mitigating factors. *In re Vaught*, 693 N.W.2d at 890. The referee found that Albrecht's disciplinary history and the harm to his client were aggravating factors in Albrecht's case and that there were no mitigating factors. *See In re Berg*, 741 N.W.2d 600, 605 (Minn.2007) ("[A]n attorney's prior disciplinary history can be considered as an aggravating factor while considering the cumulative weight of an attorney's misconduct."). We agree with the referee that both Albrecht's extensive disciplinary history and the harm caused by Albrecht's misconduct are important factors in determining the appropriate sanction. Especially given that Albrecht has been the subject of ten admonitions and four public disciplines since 1993, it is appropriate to impose a more severe sanction in this case in order to send a clear message that such repeated misconduct will not be tolerated. *See In re Graham*, 609 N.W.2d 894, 896 (Minn.2000) (explaining that the court is reluctant to grant leniency multiple times where there are problems with recurring violations).

With respect to mitigation, we concluded that the referee erred in not making a finding as to whether or not Albrecht was in fact remorseful for his conduct. Even assuming that remorse were a mitigating factor, it would not change our view as to the discipline appropriate in this case. We have imposed severe punishments in past discipline cases despite the existence of mitigating factors, particularly when we find that there are significant aggravating factors as we do here. *See In re Wentzel*, 711 N.W.2d at 522 (finding that "the mitigating factors do not outweigh the aggravating factors found by the referee" and imposing disbarment in a misappropriation case despite the existence of four mitigating factors); *In re Stroble*, 487 N.W.2d 869, 871 (Minn.1992) (disbarring respondent in a misappropriation case while acknowledging the existence of several mitigating factors, including respondent's expressed remorse and his pro bono activities).

Based on our analysis of the nature and cumulative impact of Albrecht's misconduct, and of the harm to the public and to the legal profession, and considering aggravating and mitigating factors, we adopt the referee's recommendation that Albrecht be indefinitely suspended with no

opportunity to petition for reinstatement for a minimum of two years. Accordingly, we order that:

1. Alan J. Albrecht is indefinitely suspended from the practice of law in Minnesota, effective 14 days from the date of filing of this opinion, with no right to petition for reinstatement for a period of two years from the date of filing of this opinion.

2. Albrecht shall comply with Rule 26, RLPR, (requiring notice of suspension to clients, opposing counsel, and tribunals), and shall pay $900 in costs, plus disbursements, pursuant to Rule 24, RLPR.

3. After a two-year suspension, Albrecht shall have the right to petition for reinstatement under Rule 18(a)–(d), RLPR, provided he demonstrates by clear and convincing evidence that:

a) He has paid $900 in costs, plus disbursements, to the Director;

b) He has complied with the notice requirements of Rule 26, RLPR;

c) He has successfully completed and obtained a passing score on the multistate professional responsibility exam;

d) He has satisfied all continuing legal education requirements pursuant to Rule 18(e), RLPR; and

e) He is fit to practice law and his past misconduct is unlikely to recur.

So ordered.