In re Petition for **DISCIPLINARY ACTION AGAINST Alan J. ALBRECHT, a Minnesota Attorney, Registration No. 191826.**

No. A13–0520.

Supreme Court of Minnesota.

April 9, 2014.

Martin A. Cole, Director, Robin J. Crabb, Senior Assistant Director, Office of Lawyers Professional Responsibility, Saint Paul, MN, for petitioner.

Alan J. Albrecht, Brooklyn Center, MN, pro se.

## OPINION

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility petitions for disciplinary action against attorney Alan J. Albrecht. The Director's initial petition alleged that Albrecht violated numerous rules of professional conduct and one rule of professional responsibility by engaging in sexual activity with a client, giving legal advice while suspended from practicing law, being paid for that unauthorized legal advice and lying to the Director about the payment, and failing to cooperate with the Director's investigation. We referred the matter to a referee. The Director later filed a supplementary petition alleging that Albrecht violated additional rules by lying to or misleading the referee and Director during the disciplinary proceedings and submitting false or misleading information to the Director.

After a hearing, the referee recommended that we disbar Albrecht. The Director agrees. Albrecht disputes the findings and conclusions underlying the referee's recommendation and proposes

less severe discipline, such as suspension with conditions on reinstatement. While we conclude that some of the referee's legal conclusions are erroneous and should be disregarded, we agree that Albrecht should be disbarred.

## I.

Albrecht's disciplinary history is extensive. Since Albrecht joined the Minnesota bar in 1988, the Director has privately admonished him 13 times, first in 1993 and most recently in 2011. Three times we have placed Albrecht on supervised probation, *In re Albrecht* (*Albrecht IV*), 660 N.W.2d 790, 797 (Minn.2003); *In re Albrecht* (*Albrecht III*), 577 N.W.2d 712, 713 (Minn.1998) (order); *In re Albrecht* (*Albrecht I*), 565 N.W.2d 704, 705 (Minn.1997) (order), twice suspended him for a defined period, *Albrecht IV,* 660 N.W.2d at 797 (90 days); *In re Albrecht* (*Albrecht II*), 573 N.W.2d 89, 91 (Minn.1998) (order) (45 days), once publicly reprimanded him, *Albrecht I,* 565 N.W.2d at 705, and, most recently, suspended him indefinitely, *In re Albrecht* (*Albrecht V*), 779 N.W.2d 530, 543 (Minn.2010) (minimum of 2 years). That final suspension is still in effect. Albrecht's past misconduct included receiving checks that were not payable to him, neglectful and incompetent representation, dishonesty to clients and opposing counsel, failing to inform clients of his suspensions, practicing law while suspended, and failing to cooperate with the Director's investigations.

The misconduct for which the Director requests that we now disbar Albrecht relates to four distinct episodes: Albrecht's sexual relationship with a client, K.A.; Albrecht's work on matters related to client J.M.'s bankruptcy; Albrecht's receipt of payment for the J.M. matters; and Albrecht's attempts to take a final exam while auditing a course at Hamline Law School. We discuss each in turn.

## A.

Albrecht began representing K.A. in January 2005.[1] He represented her continuously until May 2007, and then again from July to November 2007. The matters in which Albrecht represented K.A. included the post-decree portion of a marriage dissolution and child-custody dispute, a different marriage dissolution, and two prosecutions for driving while impaired. During the representation, Albrecht knew that K.A. was abusing alcohol and had attempted suicide.

Sometime in 2005, after the representation began, Albrecht and K.A. engaged in consensual sexual relations in locations that included Albrecht's office suite. By January 2006, K.A. sought to end their sexual relationship. Albrecht began to pressure K.A. for sexual favors. From May 2006 to November 2007, when the

---

1. Our recitation of the facts draws on the referee's findings. Those findings, and the legal conclusions the referee drew from them, are conclusive because neither party ordered a transcript of the hearing before the referee. Rule 14(e), Rules on Lawyers Professional Responsibility (RLPR). Albrecht's repeated assertions that the findings are inaccurate demonstrate the simple reason for the rule: We cannot evaluate such factual challenges without a transcript because "we cannot review the evidence supporting th[e] findings." *In re Dedefo,* 781 N.W.2d 1, 7 (Minn.2010).

Therefore, we accept the referee's findings and conclusions about what happened. *In re Montez,* 812 N.W.2d 58, 66 (Minn.2012).

Albrecht waited to raise any challenge to the requirements of Rule 14(e) until after the deadline for ordering copies of the hearing transcript had passed. He then sought permission to file a single untimely copy, rather than the three copies required by Rule 14(e). We denied Albrecht's request then, and we will not now consider his factual challenges to the referee's findings.

representation ended, Albrecht pressured K.A. to engage in sexual activity every time she came to his office for legal advice.

The Director alleged, and the referee concluded, that Albrecht violated Minn. R. Prof. Conduct 1.8(j)[2] by having sexual relations with K.A. while representing her.

### B.

In 2010, we suspended Albrecht from the practice of law for a minimum of two years. *Albrecht V*, 779 N.W.2d at 543. Shortly thereafter, Albrecht began working as a paralegal for Thao & Li, P.A. Thao & Li consisted of a single lawyer, Frances Li.

In early August 2011, J.M. sought legal assistance in filing for bankruptcy. On behalf of Thao & Li, Albrecht prepared and entered into a written retainer agreement with J.M. Albrecht did not consult Li, even though she had the sole authority to accept representations and bill for the firm. Albrecht remained J.M.'s primary source of legal advice throughout the representation. J.M. never spoke with Li during the representation.

J.M.'s initial concern was that his creditors were trying to repossess vehicles he owned. Albrecht advised him about the effect of filing for bankruptcy. Thao & Li then initiated a bankruptcy filing on J.M.'s behalf, which led to an automatic stay of collection activities, but the firm missed the deadline for completing the filing. When the bankruptcy court dismissed the incomplete filing and lifted the stay and J.M.'s creditors again sought to repossess one of his vehicles, Albrecht advised J.M.

that J.M. could prevent the repossession by avoiding service.

Later that fall, the trustee in J.M.'s bankruptcy filed a motion to compel J.M. to turn over certain information, including a copy of the title to another of his vehicles. Albrecht advised J.M. about the meaning and effect of the motion. Specifically, he told J.M. the motion was "bogus." J.M. then appeared without representation at a hearing and told the bankruptcy judge that the motion was "bogus." After the hearing, the bankruptcy judge ordered J.M. and Li to appear and explain, among other things, how and why Albrecht told J.M. the motion was "bogus." The bankruptcy judge scheduled their appearance for March 2012.

Around the same time, Thao & Li submitted a complete bankruptcy petition and the bankruptcy court granted J.M.'s discharge. A creditor then initiated an action in state court to repossess one of J.M.'s vehicles and moved for default or summary judgment. The state court judge scheduled a hearing on the motion, also in March 2012.

In early March, before the hearing in state court or J.M.'s appearance before the bankruptcy judge, Albrecht telephoned J.M. Albrecht said he was helping J.M. by drafting an affidavit, regarding matters in the repossession action. Albrecht also advised J.M. on the upcoming appearance before the bankruptcy judge. Albrecht coached J.M. on what to say, suggested that J.M. lie and say he had been confused at the hearing on the motion, and practiced J.M.'s testimony with him.

The Director alleged that Albrecht violated Minn. R. Prof. Conduct 5.5[3] and

---

**2.** According to Minn. R. Prof. Conduct 1.8(j), "[a] lawyer shall not have sexual relations with a client unless a consensual sexual relationship existed between them when the client-lawyer relationship commenced."

**3.** According to Minn. R. Prof. Conduct 5.5(a), "[a] lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction."

5.8(b)(1) and (6) [4] by giving J.M. legal advice while suspended from practicing law. The referee agreed that Albrecht violated Rule 5.5 but concluded that Albrecht did not violate Rule 5.8, because that rule "appears directed at supervising lawyers rather than non-lawyers including suspended or disbarred lawyers." [5]

### C.

In mid-August 2011, a friend of J.M. gave Albrecht a check for $600 as partial payment for Thao & Li's work on J.M.'s bankruptcy. Albrecht told Li about the check, but incorrectly said it was for $800. Li gave Albrecht permission to deposit the check to his bank account as payment for his work.

On August 24, J.M.'s girlfriend wired $850 directly to Albrecht's personal bank account as partial payment for work on J.M.'s bankruptcy. This time, Albrecht did not tell Li about the payment or convey the money to Thao & Li.

Albrecht prepared an invoice, dated August 24, 2011, describing his work for Thao & Li on J.M.'s bankruptcy and listing $900 as the value of his services. Albrecht signed the invoice and wrote, "paid 8/24." Li believed the invoice referred to the check she had let Albrecht keep. Thao & Li did not receive any other payment for representing J.M. in his bankruptcy.

During his investigation, the Director asked Albrecht about the August 24 wire transfer. Albrecht told the Director that he did not learn of the payment until July 2012.

The Director alleged that Albrecht violated Minn. R. Prof. Conduct 1.15(a),[6] 5.8(b)(5),[7] and 8.4(c) and (d) [8] by receiving, retaining, and failing to report or transfer the payment and violated Minn. R. Prof. Conduct 8.1(b) [9] and 8.4(c) and (d) and

---

4. According to Minn. R. Prof. Conduct 5.8(b), "[a] lawyer shall not employ, associate professionally with, or aid a person the lawyer knows or reasonably should know has been ... suspended ... to do any of the following on behalf of the lawyer's client: (1) render legal consultation or advice to the client; ... or (6) engage in activities that constitute the practice of law."

5. When recounting the events related to these charges, the referee also found that "[d]uring fall 2011, [Albrecht] held himself out as an attorney." Because this finding was not a basis for any legal conclusion or recommendation of discipline, we reject Albrecht's assertion that it violated his right to due process, even if he is correct that it went beyond the Director's charges. Cf. In re Keate, 488 N.W.2d 229, 233 (Minn.1992) (holding that findings going beyond the Director's charges did not violate due process when the disciplined lawyer "was not prejudiced by the additional facts" and "[n]o new charges were brought ... based on th[e] additional facts").

6. According to Minn. R. Prof. Conduct 1.15(a), "[a]ll funds of clients or third persons held by a lawyer or law firm in connection with a representation shall be deposited in one or more identifiable trust accounts."

7. According to Minn. R. Prof. Conduct 5.8(b)(5), "[a] lawyer shall not employ, associate professionally with, or aid a person the lawyer knows or reasonably should know has been ... suspended ... to[,] ... on behalf of the lawyer's client[,] ... receive, disburse, or otherwise handle the client's funds."

8. According to Minn. R. Prof. Conduct 8.4, "[i]t is professional misconduct for a lawyer to: ... (c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation; [or] (d) engage in conduct that is prejudicial to the administration of justice."

9. According to Minn. R. Prof. Conduct 8.1(b), "a lawyer ... in connection with a disciplinary matter, shall not ... fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from a[] ... disciplinary authority."

Rule 25, RLPR,[10] by lying to the Director about the wire transfer. The referee again concluded that Albrecht did not violate Rule 5.8, but otherwise agreed with the Director's allegations. The referee also concluded that Albrecht violated Minn. R. Prof. Conduct 5.5 by handling client funds while suspended.

Albrecht challenges the referee's conclusion on the ground that the Director did not charge a violation of Rule 5.5 for handling funds related to J.M.'s bankruptcy. Albrecht is correct; the Director alleged that, "by receiving, disbursing, or otherwise handling client funds in the [J.M.] matter ... while performing paralegal services for Thao & Li, P.A., [Albrecht] violated *Rule 5.8(b)(5), MRPC*." (Emphasis added.) Therefore, because this violation of Rule 5.5, though found by the referee, was not "set forth" in the Director's petition as required by Rule 12(a), RLPR, we decline to consider it.[11] *See In re Getty,* 452 N.W.2d 694, 696 n. 1 (Minn.1990); *cf. In re Peterson,* 260 Minn. 339, 345, 110 N.W.2d 9, 13 (1961) ("[T]he charges of professional misconduct, though informal, should be sufficiently clear and definite, in the light of the circumstances of each case, to afford the respondent an opportunity to prepare and present his defense.").

Albrecht also argues that lying to the Director about the wire transfer could not constitute noncooperation with an investigation under Rule 25, RLPR. Albrecht reads the rule to reach only failures to participate or respond to requests from the Director. We disagree. The Rule requires lawyers to "cooperate ... by complying with reasonable requests." Rule 25, RLPR. Nothing in that language excuses lying, and Albrecht offers no ex-

planation for why the Rule would forbid passive nonparticipation but not active interference with an investigation. By choosing to lie rather than comply with the Director's reasonable request for information, Albrecht failed to cooperate with the investigation, and thus violated Rule 25, RLPR.

### D.

In the spring of 2013, while Albrecht was suspended but seeking reinstatement, he audited a course on bankruptcy law at Hamline Law School. During the semester, he inquired at the registrar's office about taking the final exam. The Hamline staff told him that auditors were not allowed to take exams.

That March, the Director filed the initial petition in this case. In late April, the referee sought to schedule a conference call with Albrecht and the Director. Albrecht wrote that he "ha[d] registered to take the final for [his] [bankruptcy] class on [May] 3, 2013." The referee scheduled the call for the morning of May 7.

On May 1, Albrecht submitted information to the Director to supplement his petition for reinstatement. In his submission, Albrecht wrote that he had taken a bankruptcy course at Hamline and had "t[aken] the final." He had not.

On the morning of May 7, Albrecht failed to participate in the scheduled conference call with the referee and the Director. That afternoon, Albrecht returned to the registrar's office, sought to take the bankruptcy exam, and was again told that he could not. The next day, Albrecht ex-

---

10. According to Rule 25, RLPR, "[i]t shall be the duty of any lawyer who is the subject of an investigation or proceeding under these Rules to cooperate with ... the Director ... by complying with reasonable requests."

11. Because the Director did not charge Albrecht under Rule 5.5 for handling client funds, we need not, and do not, address Albrecht's challenge to the referee's use of Rule 5.8 to inform his interpretation of Rule 5.5.

plained to the referee, "I did not feel like I had ... prepared enough to proceed with the final [on May 3] so I rescheduled it to Tuesday morning [May 7]."

But Albrecht had not rescheduled the exam, because he had not registered to take it in the first place. Moreover, though Albrecht did try to take the exam on May 7, he did not do so until the afternoon, after he had already missed the conference call scheduled for that morning.

The Director filed a supplementary petition for disciplinary action, alleging that Albrecht violated Minn. R. Prof. Conduct 3.3(a)(1),[12] 4.1,[13] 8.1, and 8.4(c) and (d) by lying to or misleading the referee and the Director about the exam. The referee agreed.

Albrecht challenges the referee's conclusions that his false or misleading statements violated Rules 3.3 and 4.1. Albrecht invokes a comment to Rule 3.3 [14] and the text of Rule 4.1, both of which refer to a lawyer "representing a client." Because Albrecht was not representing a client when he made the statements, we agree that he did not violate Rules 3.3 or 4.1.

### E.

Therefore, we conclude that Albrecht violated Minn. R. Prof. Conduct 1.8(j), 1.15(a), 5.5(a), 8.1, and 8.4(c) and (d) and Rule 25, RLPR, but that he did not violate Minn. R. Prof. Conduct 3.3(a)(1) or 4.1.

### II.

■ We are the "sole arbiter" of the discipline to be imposed for professional misconduct by Minnesota lawyers. *In re Singer*, 541 N.W.2d 313, 315 (Minn.1996). We discipline lawyers to deter future misconduct, by other lawyers as well as those subject to the discipline, and to protect the public and the judicial system. *E.g., Albrecht V*, 779 N.W.2d at 540. We determine the appropriate discipline to impose by considering four factors: "1) the nature of the misconduct, 2) the cumulative weight of the violations of the rules of professional conduct, 3) the harm to the public, and 4) the harm to the legal profession." *Singer*, 541 N.W.2d at 316. We also consider both the discipline we have imposed in similar cases and the aggravating and mitigating factors that distinguish a particular case. *Albrecht V*, 779 N.W.2d at 540.

Albrecht's misconduct was both serious and weighty. Albrecht had sexual relations with a client over an extended period of time and pressured her for sex whenever she sought legal advice, practiced law while suspended, received and retained payment for legal services while suspended without informing his supervising attorney, lied to the Director about receiving that payment, lied to or misled the Director about taking the bankruptcy exam, and lied to or misled the referee and the Director about his availability to participate in disciplinary proceedings.

■ Of particular concern is that this misconduct resembled, in part, misconduct for which Albrecht has previously been disciplined. Specifically, Albrecht has been disciplined for failing to properly de-

---

**12.** According to Minn. R. Prof. Conduct 3.3(a)(1), "[a] lawyer shall not knowingly ... make a false statement of fact ... to a tribunal, or fail to correct a false statement of material fact ... previously made to the tribunal by the lawyer."

**13.** According to Minn. R. Prof. Conduct 4.1, "[i]n the course of representing a client a lawyer shall not knowingly make a false statement of fact."

**14.** According to Minn. R. Prof. Conduct 3.3 cmt., "[t]his Rule governs the conduct of a lawyer who is representing a client in the proceedings of a tribunal."

posit funds, making false and misleading statements, failing to cooperate with the Director's investigations, and practicing law while suspended. Such recurrent violations mark a pattern of violations and show that Albrecht has failed to learn from past discipline. *See, e.g., Albrecht V,* 779 N.W.2d at 541. We also consider misconduct that includes multiple rule violations and persists over time more serious than "single isolated incident[s]" or "brief lapse[s] in judgment." *In re Wentzel,* 711 N.W.2d 516, 521 (Minn.2006). Albrecht's misconduct comprised four distinct episodes, each including multiple violations and lasting several years, months, or days, and was in no way isolated or brief.

We next consider the harm that Albrecht caused. At the outset, we emphatically reject Albrecht's assertion that he could not have harmed K.A. because the referee found that their sexual relationship began as "consensual." The lawyer-client relationship is "almost always unequal" and can be "unfair[ly] exploit[ed]" in a sexual relationship, regardless of how the relationship began. Minn. R. Prof. Conduct 1.8 cmt. 17. Indeed, Albrecht's behavior in this case—including pressuring his client for sexual favors every time she sought to discuss legal matters *after she told him she no longer wished to engage in sexual activity*—exemplifies the very inequality and exploitation of the lawyer's role that Rule 1.8(j) prohibits.

▮ Albrecht's misconduct also harmed Li, who received a public reprimand for her failure to supervise Albrecht, *see In re Li,* 842 N.W.2d 2 (Minn.2014) (order). We also take into account the harm that Albrecht caused to the public and the legal profession in general. *See, e.g., Albrecht V,* 779 N.W.2d at 541–42. Practicing law while suspended "harm[s] the legal profession and do[es] not represent the virtues that the public has the right to expect of lawyers." *In re Grigsby,* 815 N.W.2d 836, 846 (Minn.2012). That Albrecht practiced law while suspended deliberately violated our suspension order. *See In re Jorissen,* 391 N.W.2d 822, 826 (Minn.1986). Finally, Albrecht's multiple lies, like all dishonesty by lawyers, violated the public's right to trust in the integrity of the legal profession and therefore were "misconduct of the highest order," which "warrants severe discipline." *In re Ruffenach,* 486 N.W.2d 387, 391 (Minn.1992).

▮ When determining the discipline to impose for a lawyer's misconduct, we generally refer to what we have done in similar cases. *Albrecht V,* 779 N.W.2d at 540. The variety of Albrecht's misconduct and the extent of his disciplinary history are unusual and make direct comparisons difficult. We have disbarred lawyers for less than what Albrecht has done. *See, e.g., In re Ray,* 610 N.W.2d 342, 346–47 (Minn.2000) (disbarring a lawyer for repeatedly practicing law while suspended); *Jorissen,* 391 N.W.2d at 825–26 (disbarring a lawyer who implicitly represented himself as a lawyer while suspended and then claimed to have been acting as a paralegal or law clerk).

We also look for circumstances that mitigate or aggravate the lawyer's misconduct. *Albrecht V,* 779 N.W.2d at 540. Here, the referee found no mitigating factors and several aggravating factors.[15] In

---

**15.** Because the identification of mitigating and aggravating factors includes "both find[ing] facts and draw[ing] conclusions from those facts," Rule 14(e), RLPR, renders the referee's findings and conclusions conclusive when, as here, neither party orders a transcript. *Montez,* 812 N.W.2d at 67. We therefore decline Albrecht's invitation to consider various alleged mitigating factors that the referee did not find and to disregard the aggravating factors that he did find.

particular, the referee found that Albrecht failed to establish the five elements necessary for mitigation based on a psychological disorder. *See In re Weyhrich,* 339 N.W.2d 274, 279 (Minn.1983). Albrecht argues that he can receive mitigation without proving the *Weyhrich* factors. He cannot. *See In re Mayne,* 783 N.W.2d 153, 161 (Minn.2010) (allowing mitigation for a psychological disorder without proving the *Weyhrich* factors only if the lawyer's misconduct was unintentional or passive).

The referee also found that Albrecht's misconduct was aggravated by his extensive history of misconduct and discipline, his history of substantially similar misconduct, the fact that his misconduct occurred while he was suspended, his pattern of dishonest conduct, his lack of remorse and failure to assure the referee that the misconduct would not recur, and his failure to cooperate with the Director's investigation. Albrecht challenges the referee's legal conclusion regarding the final aggravating factor, noncooperation. The referee found noncooperation based on Albrecht's misleading statements about the bankruptcy exam, and Albrecht argues that the referee thereby improperly "double counted" those statements. Albrecht is correct.[16] *In re O'Brien,* 809 N.W.2d 463, 466 n. 9 (Minn.2012).

 Finally, we note that the referee recommended that we disbar Albrecht. Though we bear the ultimate responsibility for imposing discipline, we give "significant weight" to referees' recommendations. *Singer,* 541 N.W.2d at 315.

When we indefinitely suspended Albrecht in 2010, we sought to "send a clear message that [his] repeated misconduct

will not be tolerated." *Albrecht V,* 779 N.W.2d at 542. Our message was not heeded. Accordingly, we order that:

1. Attorney Alan J. Albrecht is disbarred in the State of Minnesota, effective on the date this opinion is filed;

2. Albrecht shall comply with Rule 26, RLPR, requiring him to notify clients, opposing counsel, and tribunals of his disbarment; and

3. Albrecht shall pay the Director $900 in costs, plus any disbursements, pursuant to Rule 24, RLPR.

So ordered.

---

**16.** We have "caution[ed] referees not to rely on the *same* acts of noncooperation to support both a finding of attorney misconduct and the existence of an aggravating factor." *In re O'Brien,* 809 N.W.2d 463, 466 n. 9 (Minn.2012). We repeat that warning.