STATE OF MINNESOTA

IN SUPREME COURT

A14-1416

Original Jurisdiction

Per Curiam
Took no part, Hudson, J.

In re Petition for Disciplinary Action against
Marc G. Kurzman, a Minnesota Attorney,
Registration No. 59080.

Filed:  November 25, 2015
Office of Appellate Courts

_____

Martin A. Cole, Director, Kevin T. Slator, Senior Assistant Director, Office of Lawyers Professional Responsibility, Saint Paul, Minnesota, for petitioner.

Eric T. Cooperstein, Law Office of Eric T. Cooperstein, Minneapolis, Minnesota, for respondent.

_____

S Y L L A B U S

1.      When an attorney on probation for professional misconduct commits further misconduct, such misconduct is an aggravating factor, regardless of whether the rules violated are the same.

2.      Respondent's misconduct warrants a 60-day suspension.

O P I N I O N

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility filed a petition for disciplinary action alleging that respondent Marc G. Kurzman committed professional misconduct warranting public discipline.  The petition alleged that Kurzman asked a question during a deposition that assumed the witness had been accused of sexual

1

misconduct with minors without a good faith basis, failed to provide a copy of a client's file for an unreasonable period of time, failed to submit records to the court as directed, and provided materials from multiple clients' files to another client. We referred the matter to a referee.

After a hearing, the referee concluded that Kurzman's conduct violated the Minnesota Rules of Professional Conduct, found several aggravating factors, and recommended a 60-day stayed suspension.

Kurzman has not challenged the referee's findings, conclusions, or recommendation. The Director challenges the referee's recommendation, arguing that Kurzman's misconduct while on probation was an aggravating factor that warrants stronger discipline. The Director seeks a 60-day imposed suspension and a requirement that Kurzman petition for reinstatement.

We conclude that Kurzman committed professional misconduct that warrants a 60-day suspension without requiring a petition for reinstatement.

I.

The Director bears the burden of proving professional misconduct by clear and convincing evidence. *In re Voss,* 830 N.W.2d 867, 874 (Minn. 2013). Because the Director ordered a transcript of the disciplinary hearing, the referee's findings of fact and conclusions of law are not conclusive, and we are not bound by them. *See* Rule 14(e), Rules on Lawyers Professional Responsibility (RLPR); *In re Ulanowski*, 800 N.W.2d 785, 793 (Minn. 2011). When one party orders a transcript, we "review a referee's findings and conclusions under the clearly erroneous standard and will reverse only when

2

the findings and conclusions are without evidentiary support in the record." *In re Jones*, 834 N.W.2d 671, 677 (Minn. 2013). A referee's findings are clearly erroneous when we are "left with the definite and firm conviction that a mistake has been made." *In re Strid*, 551 N.W.2d 212, 215 (Minn. 1996) (quoting *Gjorvik v. Strope*, 401 N.W.2d 664, 667 (Minn. 1987)).

The Director's petition alleges two counts involving five charges against Kurzman: inappropriately questioning a witness during a deposition, failing to provide two different clients with their files within a reasonable period of time, failing to submit records to the court as directed, and providing confidential materials from multiple clients to another of his clients. We discuss each charge in turn.

A.

The events underlying the first count of the Director's petition began in early 2012, while Kurzman was still on probation from a 2010 disciplinary action.[1] In March 2012, Kurzman represented J.D. in a child visitation matter. M.S. was the court-appointed parenting consultant. During M.S.'s deposition, Kurzman implied that M.S. had previously been accused of sexual misconduct with minors.[2]

---

[1] Kurzman's disciplinary history is discussed below.

[2] KURZMAN:    When you were accused of inappropriate contact with some of your clients, boys, at that time did you undergo a polygraph examination?

[M.S.]:    I've never been accused of inappropriate contact with -- you mean patients?

(Footnote continued on next page.)

During the evidentiary hearing before the referee, Kurzman testified that prior to the deposition he recalled that M.S. had been accused of sexual contact with minors. However, Kurzman had no evidence to support that recollection. The referee found that Kurzman's testimony was not credible, that the deposition question "appeared to be intended to embarrass and humiliate" M.S., and that the question was asked without a good faith basis. The Director alleged, and the referee concluded, that Kurzman had violated Minn. R. Prof. Conduct 4.4(a)[3] and 8.4(d).[4]

B.

In March 2012, J.D. retained Kurzman for a family law matter. A year later, Kurzman notified J.D. that he was withdrawing from representation. In April 2013, J.D.

---

(Footnote continued from previous page.)

KURZMAN:      Yeah.

[M.S.]:      I've never been accused of inappropriate contact with boys who've been my patients.

. . . .

KURZMAN:      Have you ever been accused of inappropriate contact with any children?

[M.S.]:      No. Not that I'm aware of, no. Never any allegations. I would love to see any documentation of that. It actually can't exist.

[3]    Minn. R. Prof. Conduct 4.4(a) provides in relevant part that, "[i]n representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass . . . or burden a third person . . . ."

[4]    Minn. R. Prof. Conduct 8.4(d) provides that "[i]t is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice."

collected his files from Kurzman's office, but three boxes were missing. J.D. did not receive all of his files until mid-May 2013.

The Director alleged that Kurzman had violated Minn. R. Prof. Conduct 1.16(d)[5] by failing to provide a complete copy of J.D.'s file until mid-May 2013. However, the referee concluded that Kurzman did not violate the rule, because both Kurzman and J.D. had contributed to the delay in returning the file.

C.

In 2007, S.A. retained Kurzman to represent her regarding a child custody and visitation matter. Kurzman brought a *Nice-Petersen* motion[6] that was heard in November 2009. To obtain an evidentiary hearing on the motion, S.A. was required to make a prima facie showing of endangerment to the child. However, the supporting records submitted to the court were redacted and incomplete, in part because S.A. had not signed an authorization for release of information. The judge requested "clean copies" of the records on four occasions during a preliminary hearing and directed Kurzman to submit a release signed by S.A. for the records within 30 days.

---

[5] Minn. R. Prof. Conduct 1.16(d) provides in relevant part that, "[u]pon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as . . . surrendering papers and property to which the client is entitled . . . ."

[6] A *Nice-Petersen* motion is one for substantial modification of custody. The movant must support the motion with "an affidavit setting forth facts in support of the modification." *Nice-Petersen v. Nice-Petersen*, 310 N.W.2d 471, 472 (Minn. 1981).

Kurzman did not provide the records by the deadline nor did he request an extension.[7] In January 2010 the judge denied S.A.'s request for an evidentiary hearing, noting, "[a]ll the parties also agreed that the record was incomplete and the Court would need additional documentation before making a ruling on whether to grant an evidentiary hearing." That same day, Kurzman submitted the required documents, more than a month late. Ten days later, Kurzman requested reconsideration of the January 2010 order. The judge denied the request for reconsideration, but nonetheless reviewed the unredacted records that Kurzman filed.

The referee found that, although the delay caused by Kurzman did not appear to affect the judge's ultimate decision, it caused delay in a likely time-sensitive child custody case and impacted S.A.'s relationship with the legal profession. The Director alleged, and the referee concluded, that Kurzman's failure to submit the records as directed or to seek an extension of the deadline violated Minn. R. Prof. Conduct 1.1,[8] 1.3,[9] and 8.4(d).

---

[7] Kurzman testified during the disciplinary hearing that he was in Florida during this time with his ailing mother.

[8] Minn. R. Prof. Conduct 1.1 provides that "[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation."

[9] Minn. R. Prof. Conduct 1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

D.

In 2013, S.A. discharged Kurzman and requested a copy of her client files. S.A. retrieved her files in May 2013. In August 2013, S.A. contacted Kurzman's office and said her files were incomplete. In December 2013, Kurzman located four more boxes of S.A.'s files and sent them to her home.

The Director alleged, and the referee found, that Kurzman "failed to apply adequate reasonable actions to timely return files," which violated Minn. R. Prof. Conduct 1.16(d).

E.

Among the files shipped to S.A. were court pleadings and additional materials belonging to other clients in unrelated cases. S.A. returned the other clients' files at Kurzman's expense, as requested. The Director alleged Kurzman violated Minn. R. Prof. Conduct 1.1, 1.6(a), 1.16(d), and 8.4(d) by providing materials from other clients' files to S.A. However, the referee concluded that Kurzman violated only Minn. R. Prof. Conduct 1.6(a).[10]

Kurzman does not challenge the referee's findings and conclusions that Kurzman violated Minn. R. Prof. Conduct 1.1, 1.3, 1.6(a), 1.16(d) (in the S.A. matter only), and 4.4(a); and violated Rule 8.4(d) twice.

---

[10] Minn. R. Prof. Conduct 1.6(a) provides that "[e]xcept when permitted under paragraph (b), a lawyer shall not knowingly reveal information relating to the representation of a client."

Although comprised of relatively minor violations, Kurzman's disciplinary history is extensive. Since Kurzman joined the Minnesota bar in 1972, he has been disciplined 10 times for violating 19 provisions of the professional rules, some multiple times. Between 1994 and 2013, the Director privately admonished him eight times. In 2007, Kurzman was placed on private probation. In 2010, we publicly reprimanded him for trust account recordkeeping violations and placed him on supervised probation for 2 years. *In re Kurzman*, No. A10-1022, Order at 1 (Minn. filed July 16, 2010).

The referee found no mitigating factors. However, the referee found several aggravating factors: (1) Kurzman's disciplinary history; (2) Kurzman's conduct in violating Rules 1.3, 4.4(a), and 8.4(d), all rules that he had previously violated; and (3) Kurzman's substantial experience in the practice of law.

The Director argues that Kurzman's misconduct during the M.S. deposition is aggravated because Kurzman was on probation. The referee's determination on this issue is unclear. The referee said that Kurzman's misconduct while on probation "may [have] been] an aggravating factor, [but] such aggravation may [have been] mitigated by the differences" between the misconduct underlying the probation (trust account recordkeeping violations) and the misconduct at issue here.

The law is clear: misconduct while on probation is an aggravating factor, whether the rule violations are the same or different. *In re McCormick*, 819 N.W.2d 442 (Minn. 2012), is instructive. In that case, the attorney argued that disciplinary history should be an aggravating factor "only when [that] misconduct is similar to the current misconduct."

*Id.* at 444. We disagreed, stating that "we have found an attorney's disciplinary history to be an aggravating factor even when it was not similar to the current misconduct." *Id.* at 444-45. In other cases, we have made it clear that "violat[ing] the disciplinary rules while on probation warrants a more significant punishment." *In re Moulton*, 721 N.W.2d 900, 905 (Minn. 2006); *In re Graham*, 609 N.W.2d 894, 897 (Minn. 2000) (holding that new misconduct occurring while the attorney was on probation was a "significant aggravating factor").

Accordingly, Kurzman's misconduct while on probation is an aggravating factor that we will consider when imposing discipline.

## III.

This court bears "final responsibility" for imposing discipline on Minnesota attorneys, *In re Jones*, 834 N.W.2d 671, 681 (Minn. 2013), and is "the sole arbiter of the discipline to be imposed." *In re Singer*, 541 N.W.2d 313, 315 (Minn. 1996). The purpose of disciplinary sanctions for professional misconduct is "not to punish the attorney but rather to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys." *In re Rebeau*, 787 N.W.2d 168, 173 (Minn. 2010). Four factors guide the imposition of discipline: "the nature of the misconduct, the cumulative weight of the violations, the harm to the public, and the harm to the legal profession." *In re Lundeen*, 811 N.W.2d 602, 608 (Minn. 2012). We also consider both the discipline imposed in similar cases and the aggravating factors and mitigating factors in this particular case. *In re Albrecht*, 779 N.W.2d 530, 540 (Minn. 2010).

9

A.

Considered together, Kurzman's rule violations were serious and weighty. Kurzman's misconduct consists of two counts arising out of separate incidents that occurred over the course of several years. Asserting without a good faith basis that M.S. had been accused of sexual misconduct with minors was serious misconduct. In addition, Kurzman failed to submit records to the court as directed or to seek an extension of the deadline, failed to provide a client her complete file for six months after being discharged, and provided materials from other clients' files to a client, for a total of six rule violations. This is a pattern of misconduct.

As we evaluate the cumulative weight of a lawyer's professional misconduct, we also consider its similarity to the lawyer's past misconduct. *Albrecht*, 779 N.W.2d at 541. Attorneys with a disciplinary history are "expected to show a renewed commitment to ethical behavior." *In re Coleman*, 793 N.W.2d 296, 308 (Minn. 2011).

Here, Kurzman has been disciplined 10 times, including eight private admonitions, one private probation, and one public reprimand. He has also been placed on 2 years of supervised probation. However, as Kurzman continues to violate the rules of professional conduct, he has not shown a renewed commitment to ethical behavior.

Kurzman argues that the court should consider each violation separately, but his argument has no merit. We have consistently held that discipline is imposed, in part, on "the nature and cumulative weight" of the misconduct, not on each act separately. *In re Ryerson*, 760 N.W.2d 893, 901-02 (Minn. 2009). The cumulative weight of Kurzman's misconduct warrants suspension.

We next consider the harm that Kurzman caused. We have said that client neglect "undermines public confidence in the legal profession, which harms the public, the legal profession and the justice system." *Albrecht*, 779 N.W.2d at 542 (quoting *In re Keate*, 488 N.W.2d 229, 235 (Minn. 1992)). Here, the referee determined that Kurzman's intentional misconduct caused harm to the parties, counsel, clients, and the administration of justice. Specifically, the referee concluded that Kurzman's failure to timely submit records to the court caused a delay in a likely time-sensitive child custody case and harmed S.A.'s relationship with the legal profession. The referee also stated that, although Kurzman's misconduct during M.S.'s deposition was "generally less serious and damaging than similar types of violations," the question was nonetheless improper. We agree.

We also look for circumstances that mitigate or aggravate the lawyer's misconduct. *Albrecht*, 779 N.W.2d at 540. Here, the referee found no mitigating factors, and Kurzman has not asserted any. The referee identified, and Kurzman does not challenge, three aggravating factors. Further, Kurzman's misconduct while on probation constituted a fourth aggravating factor.

B.

When determining the discipline to impose for a lawyer's misconduct, we generally refer to what we have done in similar cases. *Albrecht*, 779 N.W.2d at 540. The variety of Kurzman's misconduct and the extent of his disciplinary history are unusual and make direct comparisons difficult.

11

Kurzman argues that we should impose the referee's recommendation of a 60-day stayed suspension. We have no precedent for a stayed suspension for an attorney with Kurzman's history of discipline and his multiple new violations. Further, Kurzman's misconduct while on probation was an aggravating factor that the referee did not adequately consider. Under these circumstances, a 60-day executed suspension is warranted.

The Director argues for requiring Kurzman to petition for reinstatement, although the Director acknowledges this request is unusual. Rule 18(f), RLPR, provides that "unless otherwise ordered by this Court," a petition for reinstatement is not required when a lawyer "has been suspended for a fixed period of ninety (90) days or less." The Director cites only one case to support his recommendation, *In re Gurstel*, 540 N.W.2d 838 (Minn. 1995), which the Director conceded at oral argument is "an outlier." *Gurstel* dealt with an attorney who failed to file state and federal employer's withholding tax returns. *Id.* at 840-41. The referee recommended a 60-day suspension and that Gurstel be required to petition for reinstatement. *Id.* at 840. Although we agreed with the referee's unusual recommendation in that case, *id.* at 843,[11] we see a qualitative difference between Kurzman's violations and Gurstel's. Thus, a petition for reinstatement is not necessary here.

Accordingly, we order that:

---

[11]     We issued a warning to all Minnesota attorneys that future similar misconduct may result in "more severe" discipline. *Id.* at 843-44.

1.	Respondent Marc G. Kurzman is suspended from the practice of law for a minimum of 60 days, effective 14 days from the date of the filing of this opinion.

2.	Respondent shall comply with Rule 26, RLPR (requiring notice of suspension to clients, opposing counsel, and tribunals).

3.	Respondent shall pay $900 in costs pursuant to Rule 24, RLPR.

4.	Respondent shall be eligible for reinstatement to the practice of law following the expiration of the suspension period provided that, not less than 15 days before the end of the suspension period, respondent files with the Clerk of Appellate Courts and serves upon the Director an affidavit establishing that he is current in continuing legal education requirements, has complied with Rules 24 and 26, RLPR, and has complied with any other conditions for reinstatement imposed by the court.

5.	Within 1 year of the filing of this order, respondent shall file with the Clerk of Appellate Courts and serve upon the Director proof of successful completion of the professional responsibility portion of the state bar examination.  Failure to timely file the required documentation shall result in automatic re-suspension, as provided in Rule 18(e)(3), RLPR.

6.	Upon reinstatement to the practice of law, respondent shall be subject to supervised probation for 2 years, subject to the following conditions:

a. Respondent shall cooperate fully with the Director's Office in its efforts to monitor compliance with this probation.  Respondent shall promptly respond to the Director's correspondence by its due date.  Respondent shall provide the Director with a current mailing address and shall immediately notify the Director of any change of

address.  Respondent shall cooperate with the Director's investigation of any allegations of unprofessional conduct that may come to the Director's attention.  Upon the Director's request, respondent shall provide authorization for release of information and documentation to verify respondent's compliance with the terms of this probation;

b.  Respondent shall abide by the Minnesota Rules of Professional Conduct;

c.  Respondent shall be supervised by a licensed Minnesota attorney appointed by the Director, to monitor compliance with the terms of this probation.  Within 14 days from the date of the filing of this order, respondent shall provide the Director with the names of four attorneys who have agreed to be nominated as respondent's supervisor.  If, after diligent effort, respondent is unable to locate a supervisor acceptable to the Director, the Director will seek to appoint a supervisor.  Until a supervisor has signed a consent to supervise, respondent shall, on the first day of each month, provide the Director with an inventory of client files as described in paragraph (d) below.  Respondent shall make active client files available to the Director upon request;

d. Respondent shall cooperate fully with the supervisor's efforts to monitor respondent's compliance with probation.  Respondent shall contact the supervisor and schedule a minimum of one in-person meeting per calendar quarter.  Respondent shall submit to the supervisor an inventory of all active client files for which respondent is responsible by the first day of each month during probation.  With respect to each active file, the inventory shall disclose the client name, type of representation, date opened, most recent activity, next anticipated action, and anticipated closing date.  Respondent's supervisor shall file written

14

reports with the Director at least quarterly, or at such more frequent intervals as the Director may reasonably request; and

e. Respondent shall initiate and maintain office procedures which ensure that there are prompt responses to correspondence, telephone calls, and other important communications from clients, courts, and other persons interested in matters which respondent is handling, and which will ensure that respondent regularly reviews each and every file and completes legal matters on a timely basis. Within 4 weeks after the filing of this opinion respondent shall provide to the Director, and to the supervising attorney immediately when appointed, a written plan showing the office procedures he has designed and implemented to ensure that he complies with the probation requirements. Respondent shall immediately provide to the Director and the supervising attorney any changes he may make in his plan.

HUDSON, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.