STATE OF MINNESOTA

IN SUPREME COURT

A22-0800

Original Jurisdiction                                                    Per Curiam

In re Petition for Disciplinary Action Against          Filed: December 20, 2023
Samuel A. McCloud, a Minnesota Attorney,             Office of Appellate Courts
Registration No. 0069693.

_____

Susan M. Humiston, Director, Karin K. Ciano, Senior Assistant Director, Office of Lawyers Professional Responsibility, Saint Paul, Minnesota, for petitioner.

Samuel A. McCloud, Forest Lake, Minnesota, pro se.

_____

S Y L L A B U S

An indefinite suspension of an attorney for at least 90 days, with 2 years of supervised probation following reinstatement by petition under Rule 18 of the Rules on Lawyers Professional Responsibility, is the appropriate discipline for an attorney who missed a hearing, practiced law while suspended, and impermissibly disclosed a client's confidential information.

Discipline imposed.

1

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility (Director) filed a petition for disciplinary action against respondent Samuel A. McCloud, alleging multiple violations of the Minnesota Rules of Professional Conduct. Following an evidentiary hearing, the referee concluded that McCloud engaged in the unauthorized practice of law, failed to represent a client competently and diligently, and disclosed confidential client information to a third party, in violation of Minnesota Rules of Professional Conduct 1.1, 1.3, 1.6(a), and 5.5(a). The referee recommended that McCloud be suspended for 90 days, followed by 2 years of supervised probation. The Director asks the court to impose this discipline and, in addition, to require McCloud to petition for reinstatement under Rule 18 of the Rules on Lawyers Professional Responsibility (RLPR). We conclude that the referee's recommended discipline—with the additional requirement that McCloud petition for reinstatement—is the appropriate sanction.

## FACTS

McCloud was admitted to practice law in Minnesota on April 15, 1977. McCloud's disciplinary history dates from 1986: he has received seven admonishments, one public reprimand, one private probation, and two suspensions. *See In re McCloud*, 826 N.W.2d 529 (Minn. 2013) (order) (*McCloud I*) (suspending McCloud in relation to a federal conviction for tax evasion); *In re McCloud*, 955 N.W.2d 270, 282 (Minn. 2021) (*McCloud II*) (suspending McCloud based on his intentional failure to appear at multiple hearings).

2

Of note, McCloud was admonished in 1986 and 2005—and suspended in February 2021—for separate, previous failures to attend a hearing. *See McCloud II*, 955 N.W.2d at 273, 282. A different admonition (November 2013) resulted from McCloud engaging in the unauthorized practice of law in violation of Minnesota Rule of Professional Conduct 5.5(a), while he was suspended from practice. Specifically, while he was suspended, McCloud spoke to an assistant Scott County attorney about a former client in a capacity that was considered practicing law.

McCloud is not currently licensed to practice law. His license was suspended effective March 10, 2021, and although it was reinstated on May 10, 2021, reinstatement was conditioned on submission of proof of successful completion of the Multistate Professional Responsibility Examination (MPRE) by February 24, 2022. *In re McCloud*, 958 N.W.2d 917 (Minn. 2021) (order) (*McCloud III*). On March 10, 2022, we filed an order suspending McCloud from the practice of law effective 14 days from the date of the order for his failure to provide proof of successful completion of the MPRE. *In re McCloud*, 971 N.W.2d 78 (Minn. 2022) (order) (*McCloud IV*). To date, he has not filed with us proof of passage of the MPRE.

### D.E. Matter

Approximately 1 month before McCloud's suspension, on or about February 1, 2021, D.E. retained McCloud to represent him in a criminal matter in Steele County. Although McCloud attended at least one hearing on D.E.'s behalf, he never filed a

3

certificate of representation.[1] On February 1, 2021, McCloud had signed a certificate of representation and told Kelly McCloud (his wife and office manager) to file it, but it was not filed.

On February 24, 2021, we issued an order suspending McCloud from the practice of law for 60 days, effective March 10, 2021. *McCloud II*, 955 N.W.2d at 282–83. McCloud was scheduled to attend a Rule 8 hearing for D.E.'s criminal matter on March 31, 2021.[2] Because of his suspension, McCloud knew that he could not represent D.E. at the hearing on March 31, 2021.

On March 26, 2021, McCloud's office e-filed two documents with the court: (1) a certificate of representation of D.E., signed by McCloud and dated February 1, 2021; and (2) a letter signed by non-lawyer and office manager Kelly McCloud—who does all of McCloud's e-filing—asking the court to continue D.E.'s Rule 8 hearing to a date after McCloud's reinstatement on May 10, 2021. The e-filing account was tied to McCloud's attorney registration number.

At the hearing on March 31, 2021, the court granted the request for a continuance and rescheduled D.E.'s Rule 8 hearing to May 24, 2021. On April 1, 2021, the court sent

---

[1] Rule 703 of the Minnesota General Rules of Practice states, in part, "[i]n any criminal case, a lawyer representing a client, other than a public defender, shall file with the court administrator on the first appearance a 'certificate of representation,' in such form and substance as a majority of judges in the district specifies."

[2] The purpose of a Rule 8 hearing (also known as a second appearance) is to "advise defendants of their rights, to allow defendants to plead guilty, or if the defendant does not plead guilty, to request or waive an Omnibus Hearing under Rule 11." Minn. R. Crim. P. 8.01(a).

notice of the hearing to McCloud's e-mail address. Although the e-mail was opened, the hearing date was not put on McCloud's calendar by his office. D.E. did not receive notice of the hearing from the court because notice was sent to McCloud instead.

On May 10, 2021, McCloud was conditionally reinstated to the practice of law and placed on disciplinary probation. *McCloud III*, 958 N.W.2d at 917–18. McCloud did not inform his client, D.E., of the hearing set for May 24, 2021, and neither McCloud nor D.E. attended the remote Zoom hearing. At the hearing, the prosecutor asked the court not to issue a warrant for D.E.'s failure to appear and the district court rescheduled the Rule 8 hearing for June 23, 2021.

### K.B.K. Matter

In approximately July 2020, K.B.K. retained McCloud to represent her on a gross misdemeanor criminal charge of driving while impaired and on the related vehicle forfeiture matter. Ann Crabb, an assistant city attorney for the City of Minnetonka, handled the forfeiture matter for the city.

On or about March 16, 2021—6 days after McCloud was suspended from the practice of law—Crabb received a letter from McCloud dated March 8, 2021, notifying the office of his suspension. On April 6, 2021, while still suspended, McCloud telephoned Crabb and left a voicemail stating:

> Ann. My name is Sam McCloud. I have a client by the name of [K.B.K.] and her vehicle was forfeited and I'm about to file a petition for a hearing but essentially what we're doing is trying to set it up so we can take advantage of that law where you can collect a vehicle or get the vehicle out by putting a [unintelligible], etc. So, I just need to know how you proceed on these types of things and what it is you would prefer that I do so we don't have to

5

screw around trying to straighten it out later. Give me a call please . . . .
Thank you.

Crabb listened to the voicemail and believed that McCloud wanted to discuss the bond/interlock exception in Minn. Stat. § 169A.63, subd. 13 (2020).[3] Crabb realized that the message was from a suspended attorney, so she reported the voicemail to the Office of Lawyers Professional Responsibility. *See* Minnesota Rule of Professional Conduct 8.3(a). Crabb testified that the forfeiture statute is complicated and that she only discusses forfeiture issues with a vehicle owner's attorney. She does not engage in substantive discussions concerning forfeitures with paralegals, administrative staff, or other non-lawyers.

### *J.O. Matter*

In late July 2020, J.O. retained McCloud to represent him in a series of criminal cases. J.O. paid McCloud a total of $5,000 toward McCloud's $8,000 agreed-upon flat fee.

On or about August 27, 2020, J.O. wanted to post bond, so he called Donovan Harris, a licensed bail bondsman. Harris decided to arrange bond for J.O. and called McCloud to inform him of that fact. When McCloud realized that Harris was calling on behalf of J.O., he started cursing and making disparaging remarks about J.O. McCloud told Harris that J.O. was guilty, that he was either going to jail or needed to go to jail, and that he would "piss dirty." McCloud also said that J.O. still owed him money. He ended the call by hanging up on Harris.

---

[3]     This exception allows a vehicle subject to forfeiture as a result of a driving while impaired offense to be returned to the owner if the owner provides security or posts a bond and if an interlock device is attached to the vehicle.

Later that day, Harris met J.O. in a parking lot to complete paperwork. Harris told J.O. about his phone call with McCloud. In response, J.O. became very upset and hit the side of his pickup truck with his fist.

After posting bond for J.O., Harris had a second telephone call with McCloud. During this call, McCloud again used profanity, rambled, and made derogatory statements about J.O., including saying that J.O. was on drugs and was going to jail.

J.O. did not give McCloud permission to disclose confidential information about himself to Harris. On September 4, 2020, J.O. e-mailed McCloud. In the e-mail, J.O. stated that McCloud was no longer his lawyer, demanded a refund of his retainer, and stated that "if you do not return my money immediately I will report you to the bar for threatening me." Ultimately McCloud withdrew from representing J.O. and refunded him $750 of the $5,000 retainer.

### The Referee's Conclusions

The referee concluded that McCloud's failure to appear at D.E.'s Rule 8 hearing violated his obligation to provide competent and diligent representation under Minnesota Rules of Professional Conduct 1.1[4] and 1.3.[5] The referee concluded that McCloud violated

---

[4] Minnesota Rule of Professional Conduct 1.1 provides: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation."

[5] Minnesota Rule of Professional Conduct 1.3 provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

Rule 5.5(a)[6] when his office e-filed a certificate of representation with Steele County Court Administration while he was suspended and when he left a voicemail for Crabb. Finally, the referee concluded that McCloud violated Rule 1.6(a)[7] by disclosing client information in his phone calls with Harris. The referee recommended that McCloud be suspended for a minimum of 90 days—fewer than the 120 days initially sought by the Director—followed by 2 years of probation. The referee also recommended that the suspension begin once McCloud files proof with the court of his successful completion of the MPRE, which is required as part of his prior discipline case.

**ANALYSIS**

McCloud did not order a transcript of the proceedings before the referee. As a result, we accept the referee's factual findings as conclusive. *In re Montez*, 812 N.W.2d 58, 66 (Minn. 2012). "We must similarly accept as conclusive the conclusions that the referee draws from the facts, such as whether the attorney's conduct violated the Rules of Professional Conduct, when no transcript has been ordered." *Id.* "We will, however, review the referee's interpretation of the Rules of Professional Conduct, and other conclusions of law that do not rely on the referee's factual findings, de novo." *In re Mollin*,

---

[6]     Minnesota Rule of Professional Conduct 5.5(a) provides: "A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so . . . ."

[7]     Minnesota Rule of Professional Conduct 1.6(a) provides: "Except when permitted under paragraph (b), a lawyer shall not knowingly reveal information relating to the representation of a client."

940 N.W.2d 470, 473 (Minn.), *reinstatement granted*, 943 N.W.2d 148 (Minn. 2020) (order).

A.

McCloud raises two factual issues, but because he did not order a transcript, our review is limited and his factual arguments fail. First, he argues that the phone calls with Harris did not happen.[8] This is clearly a factual dispute and we accept the referee's factual findings—which are supported by evidence in the record—as conclusive.

Second, McCloud argues that his phone call with Crabb was not the practice of law. We addressed this issue under a very similar set of facts in *Mollin*, 940 N.W.2d at 472. There, the attorney was suspended from the practice of law and e-mailed a county attorney to inform him that a previous settlement was not being followed, perhaps because of a computer or administrative error. *Id.* The referee concluded that the e-mail violated Rule 5.5(a), and no transcript was ordered. *Id.* at 472–73. Mollin argued before us that the e-mail exchange was not the unauthorized practice of law. We explained:

> The rule is clear: A lawyer cannot practice law when he is not authorized to do so (for instance, if he is suspended). There is no dispute that the rule applies if Mollin was, in fact, practicing law while suspended. . . . *The only question here is whether Mollin in fact was practicing law. Because no transcript was ordered, the referee's factual finding and conclusion* about Mollin's conduct, *that Mollin was practicing law, is conclusive, even if we may have reached a different answer to that question.* We further must

---

[8]    In support of this theory, McCloud points out that J.O. did not mention in his e-mail on September 4, 2020, McCloud's earlier phone calls with Harris. The fact that J.O. did not raise that issue in his e-mail does not establish that the phone calls at issue did not happen. The referee found, based on Harris's testimony, that the calls did, in fact, occur. Because McCloud did not order a transcript of proceedings in front of the referee, we are bound by those findings. *See Montez*, 812 N.W.2d at 66.

9

accept the legal conclusion that the referee drew from that determination; namely, that Mollin violated the Rules of Professional Conduct.

*Id.* at 473–74 (emphasis added). The same reasoning applies here with equal force. The referee's determination—that McCloud was practicing law—is based in fact and therefore "is conclusive, even if we may have reached a different answer to that question." *Id.* at 474.

B.

The only issue that remains before us is the appropriate discipline to impose. In determining the appropriate discipline, we give "great weight" to the referee's recommendation, but we are ultimately responsible to determine the appropriate sanction. *In re Karlsen*, 778 N.W.2d 307, 311 (Minn. 2010). The goal of discipline is "not to punish the attorney, but rather to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys." *In re Albrecht*, 779 N.W.2d 530, 540 (Minn. 2010) (citation omitted) (internal quotation marks omitted). In determining proper discipline, we examine the nature of the misconduct; the cumulative weight of the disciplinary violations; the harm to the public; and the harm to the legal profession. *In re Greenman*, 860 N.W.2d 368, 376 (Minn. 2015). We also consider aggravating and mitigating factors. *Id.* Although we may consider similar cases, the discipline is tailored to the specific facts of each case. *Id.* We address each of these considerations in turn.

1.

We first consider the nature of McCloud's misconduct. Every violation of the Minnesota Rules of Professional Conduct is serious but, as with all things, some violations are more serious than others. McCloud's misconduct involves two instances of the unauthorized practice of law, as well as the failure to appear for a scheduled court hearing, and a breach of his duty of confidentiality.

The Director argues that the unauthorized practice of law is always serious. It is true that we have applied "severe discipline for the unauthorized practice of law after suspension when suspension was for disciplinary violations rather than for failing to pay attorney registration fees." *In re Ray*, 610 N.W.2d 342, 346 (Minn. 2000). Specifically, we have recognized that, absent mitigating factors, suspension is typically appropriate for the unauthorized practice of law because "failing to impose a suspension for an attorney's unauthorized practice of law would make our original suspension 'largely meaningless.' " *Mollin*, 940 N.W.2d at 474 (quoting *In re Kennedy*, 873 N.W.2d 133, 134 (Minn. 2016) (order)).

McCloud also missed a hearing date. It goes without saying that showing up for a court date is a bare minimum expectation for lawyers absent good cause. Missing a court date imposes costs on clients, opposing clients and lawyers, and on the court. But as the Director noted at oral argument, failing to appear for a hearing—standing alone and without other aggravating factors—typically does not result in a suspension or other public discipline.

11

McCloud's breach of his duty of confidentiality—that is, his communication with Harris—is a different matter. This was serious misconduct. It was unprofessional, degrading, and crass. Making disparaging and incriminating statements to a third party about a client without permission is a serious violation. Thus, this misconduct warrants more significant discipline.

The Director correctly notes that some of McCloud's misconduct in this case—specifically failure to appear at a hearing and unauthorized practice of law—repeats misconduct for which he was previously disciplined. Although this factor militates in favor of more discipline, it is better analyzed as an aggravating factor than as the nature of the misconduct. *See Mollin*, 940 N.W.2d at 475–76 (considering disciplinary history as an aggravating factor rather than in analyzing the nature or cumulative weight of the misconduct); *cf. In re O'Brien*, 809 N.W.2d 463, 466 n.9 (Minn. 2012) ("We caution referees not to rely on the *same* acts . . . to support both a finding of attorney misconduct and the existence of an aggravating factor.").

2.

We next assess the cumulative weight of McCloud's disciplinary violations. In doing so, we distinguish "a brief lapse of judgment or a single, isolated incident of misconduct from multiple instances of misconduct occurring over a substantial amount of time." *Greenman*, 860 N.W.2d at 377 (citation omitted) (internal quotation marks omitted). Accordingly, "the cumulative weight and severity of multiple disciplinary rule violations may compel severe discipline even when a single act standing alone would not have warranted such discipline." *In re Oberhauser*, 679 N.W.2d 153, 160 (Minn. 2004).

12

McCloud's actions spanned three different client matters and included various instances of misconduct within a relatively narrow time frame. Perhaps the most similar case in this regard is *In re Nickitas*, 984 N.W.2d 232 (Minn. 2023). That case involved a wide variety of misconduct spanning over a year. *Id.* at 239. We reasoned that "it is inaccurate to characterize the misconduct as an isolated incident. But it is also important to note that this court has witnessed misconduct continuing persistently over much longer periods of time. . . . We weigh the cumulative weight of Nickitas's misconduct accordingly." *Id.* We evaluate the cumulative weight of McCloud's misconduct in the same manner.

3.

Third, we consider the harm an attorney's misconduct caused to the public, including the number of clients harmed and the extent of that harm. *In re Coleman*, 793 N.W.2d 296, 308 (Minn. 2011). As noted above, absent mitigating factors, a suspension is the typical discipline for the unauthorized practice of law. But when we consider the appropriate length of suspension, we take into account the specific circumstances of the unauthorized practice of law. In particular, we have concluded that an instance of the unauthorized practice of law that did not result in an injury to a client was less serious than other forms of misconduct. *In re Grigsby*, 815 N.W.2d 836, 845 (Minn.), *reinstatement granted*, 822 N.W.2d 291 (Minn. 2012) (order). Here, filing a certificate of representation did not harm the client and—because it was accompanied by a letter explaining his temporarily suspended license—the certificate of representation could not cause much harm to the public. McCloud's call to Crabb did not harm his client and was made to further the client's interests. Thus, the instances of unauthorized practice of

13

law in this case were serious, but "less serious than that in cases where we have ordered harsh discipline." *Grigsby*, 815 N.W.2d at 845.

The harm caused by McCloud's other misconduct, however, is more significant. McCloud's failure to appear at a scheduled court meeting (and failure to notify his client of the hearing) harmed D.E. through unnecessary delay. Most significantly, McCloud's disclosure of J.O.'s confidential and disparaging information harmed J.O. by causing him embarrassment and undermining his trust in the legal system.

4.

We also consider whether an attorney's misconduct "reflects poorly on the entire legal profession and erodes the public's confidence in lawyers." *In re Udeani*, 945 N.W.2d 389, 398 (Minn. 2020) (citation omitted) (internal quotation marks omitted). Missing a hearing results in "the needless expenditure of judicial resources and the resources of opposing counsel, which harm[s] the legal profession." *Albrecht*, 779 N.W.2d at 542 (describing the harm resulting from the analogous misconduct of violating a court order). Negligent and incompetent acts by lawyers also hurt public confidence in the legal profession. *See In re Swanson*, 967 N.W.2d 644, 655 (Minn. 2021). The referee noted that McCloud's failure to attend the hearing in D.E.'s case caused harm to the court by delaying the matter and taking up court time.[9]

The referee also found that McCloud's acts of engaging in the unauthorized practice of law undermined trust in the ability of the legal profession to regulate itself. When a

---

[9]     It appears that the total delay was about 1 month; the missed hearing was on May 24, 2021, and the hearing was rescheduled for June 23, 2021.

14

suspended lawyer files a certificate of representation, it appears to the public and to the court system that the lawyer is continuing to practice law and not taking his suspension seriously. *See Mollin*, 940 N.W.2d at 475. Although the unauthorized practice of law harms the public perception of the legal profession, that harm was limited in this case. The referee correctly noted that the filing of the certificate of representation at the same time as the letter asking to continue D.E.'s hearing mitigates the perception that the lawyer is not taking his suspension seriously. Similarly, the voicemail at issue was heard only by Crabb, an attorney for the City of Minnetonka, who immediately recognized that McCloud was suspended from legal practice and promptly reported him.

Finally, the referee found that McCloud's misconduct in disclosing confidential client information and making derogatory statements about his client reflected poorly upon lawyers. We agree.

5.

Finally, we consider aggravating and mitigating factors. The referee found three aggravating factors in this case: McCloud was on disciplinary probation when the misconduct occurred, he has a considerable disciplinary record, and he has extensive experience in this area of the law.

The first and second aggravating factors found by the referee—the fact that McCloud committed his misconduct while on probation and his long disciplinary history—raise serious questions about whether the public will be protected if we allow McCloud to continue to practice law. *See McCloud II*, 955 N.W.2d at 279 (stating that an extensive disciplinary history and engaging in misconduct while on probation are

aggravating factors); *In re Kurzman*, 871 N.W.2d 753, 758 (Minn. 2015) (same), *reinstatement granted*, 875 N.W.2d 832 (Minn. 2016) (order); *Coleman*, 793 N.W.2d at 308 (stating that disciplinary history is an aggravating factor). "[A]fter being disciplined, an attorney is expected to show a renewed commitment to ethical behavior." *Coleman*, 793 N.W.2d at 308 (citations omitted) (internal quotation marks omitted).

This concern is particularly pronounced when the lawyer engages in the same type of misconduct for which he has been previously disciplined. *In re Cutting*, 671 N.W.2d 173, 175 (Minn. 2003); *see also In re Thedens*, 602 N.W.2d 863, 867 (Minn. 1999) (holding that more severe sanctions are warranted when the current misconduct is similar to misconduct for which the attorney has already been disciplined); *In re Lennington*, 969 N.W.2d 76, 84–85 (Minn. 2022) (same). McCloud's 2021 suspension and 2005 admonition were for failing to attend a client's probation violation hearing. *McCloud II*, 955 N.W.2d at 273, 282. His admonishment in 2013 was for the unauthorized practice of law when he spoke to a prosecutor about a former client during his suspension.

We also acknowledge the referee's finding that McCloud's substantial experience practicing law is an aggravating factor. *See In re Capistrant*, 905 N.W.2d 617, 622 (Minn. 2018) (holding that "substantial" experience is an aggravating factor).

McCloud did not offer, and the referee did not find, any mitigating factors.

6.

Based on all these considerations, we now determine the appropriate discipline. The referee recommended a 90-day suspension. Although we make an independent judgment as to the appropriate discipline, we generally impose the discipline recommended by the

referee where, as in this case, "we upheld all the referee's findings" and the referee's recommendation "is in line with the broad range of discipline we have imposed in prior cases." *In re Nwaneri*, 978 N.W.2d 878, 892 (Minn. 2022).

We look to the range of discipline imposed in similar cases to ensure consistency in our disciplinary decisions. *In re Nathanson*, 812 N.W.2d 70, 80 (Minn. 2012). The instances of unauthorized practice of law in this case are strikingly similar to those in *Mollin*, 940 N.W.2d at 472–73. In that case, the suspended attorney engaged in the unauthorized practice of law by sending an e-mail to a prosecutor and negligently filing a certificate of representation while still suspended. *Id.* The conduct here was identical, except in this case the communication with the government attorney was a voicemail rather than an e-mail. In *Mollin* the attorney received a 30-day suspension. *Id.* at 476. That, however, is not a ceiling but a floor for McCloud's discipline because McCloud's conduct includes not only additional violations of the professional responsibility rules, but also additional aggravating factors.

This case is reminiscent of *In re MacDonald*, 962 N.W.2d 451, 470 (Minn. 2021). In that case, the court ordered an indefinite suspension for at least 4 months, focusing on "the repeated nature of MacDonald's misconduct after discipline" and her "knowledge of the factual falsity of her statements," i.e., intentional acts. *Id.* Like MacDonald, McCloud has been sanctioned—including suspended—for some of the same violations in the past, which suggests that heightened discipline is warranted. And like the misconduct at issue in *MacDonald*, McCloud's misconduct includes intentionally maligning someone who stands in a special relationship to the attorney (McCloud maligned his client, while

17

MacDonald maligned a judge). Moreover, this case involves the same aggravating factors as in *MacDonald*: experience, misconduct that occurred while on probation, and disciplinary history.

This case is also similar to *In re O'Gara*, 746 N.W.2d 130 (Minn. 2008) (order), *reinstatement granted*, 887 N.W.2d 279 (Minn. 2016) (order). In that case, the attorney failed to appear for two court appearances, failed to expedite litigation in one matter, failed to communicate with her client in one matter and competently pursue the other matter, and failed to comply with the terms of disciplinary probation and the Director's efforts to monitor that probation. *Id.* at 130. We suspended the attorney for 90 days and required that she file a petition for reinstatement. *Id.* at 131. Thus, the referee's recommendation of a 90-day suspension falls within the broad range of discipline we have imposed in these similar cases. Therefore, we conclude that 90 days is an appropriate length of suspension for the incidents of misconduct that gave rise to this case.

But that does not end our inquiry. Under Rule of Lawyer's Professional Responsibility 18(f), a lawyer suspended for 90 days or fewer generally need not petition for reinstatement but instead "may apply for reinstatement by filing an affidavit . . . stating that the suspended lawyer has complied with Rules 24 and 26[,] . . . Continuing Legal Education requirements, and . . . all other conditions for reinstatement imposed by the Court." Rule 18(f), RLPR. But Rule 18(f) also authorizes us to depart from that general rule—that is, to require petitioning for reinstatement for suspensions of 90 days or fewer— in appropriate cases. *Id.* (providing for reinstatement by affidavit "[u]nless otherwise ordered by this Court").

18

The Director argues that this is an appropriate case for departing from the general rule and urges us to require reinstatement proceedings under Rule 18, RLPR. We agree.

We have previously required reinstatement proceedings—even for suspensions of 90 days or fewer—to protect the public and deter future misconduct in cases where there are compelling reasons to think that future misconduct may be likely. *Nathanson*, 812 N.W.2d at 81 (imposing an indefinite suspension of at least 90 days and noting that reinstatement proceedings are necessary); *In re Crandall*, 699 N.W.2d 769, 772 (Minn. 2005) (holding that an indefinite suspension for at least 3 months is appropriate "[g]iven the cumulative nature of respondent's client neglect and lack of communication"); *O'Gara*, 746 N.W.2d at 131 (imposing an indefinite suspension for at least 90 days).

Reinstatement proceedings allow us to consider, among other things, whether the suspended lawyer has demonstrated remorse and acceptance of responsibility for the misconduct, a change in conduct and state of mind that corrects the underlying misconduct that led to the suspension, steps taken to address specific conditions and circumstances (like physical and mental pressures) that led to the misconduct in the first place, a renewed commitment to the ethical practice of law, and competence to practice law. *See In re Tigue*, 960 N.W.2d 694, 699 (Minn. 2021). In other words, reinstatement proceedings provide a mechanism for us to evaluate whether a suspended attorney—even at the end of a suspension—poses a risk of future harm to the legal profession or the public.

In this case, we conclude that McCloud's strikingly extensive disciplinary history—including repeated instances of the same types of misconduct here at issue—compounded by the fact that he engaged in misconduct while on probation, compels

19

us to require Rule 18 reinstatement proceedings to protect the public. McCloud tells us that he will not commit misconduct again, but he has told us that before and yet here we are again. *Crandall*, 699 N.W.2d at 772 (requiring a petition for reinstatement where "the attorney has not adequately explained why the misconduct occurred . . . or what steps he has taken to prevent future misconduct"); *see also Nathanson*, 812 N.W.2d at 81.

Because McCloud has not shown us that his previous discipline has taught him that complying with the Rules of Professional Conduct is a mandatory obligation for lawyers, we do not feel sufficiently comfortable that he will reform his practices in response to the newest round of discipline. Accordingly, we conclude that McCloud must file a petition for reinstatement under Rule 18(a) and should not be reinstated until we grant that petition.

Finally, the referee noted that McCloud is currently suspended because he has not shown proof of completing the MPRE (a condition of reinstatement in his previous discipline). The referee recommended that McCloud's suspension should not begin until he shows proof of completing the MPRE. We do not find a delay in the start of the current suspension necessary. McCloud will not be allowed to practice law until we grant a petition for reinstatement following the current suspension and passing the MPRE is a condition of reinstatement from this suspension.

Accordingly, we order that:

1. Respondent Samuel A. McCloud is indefinitely suspended from the practice of law, effective from the date of this opinion, with no right to petition for reinstatement for 90 days.

20

2. Respondent may petition for reinstatement pursuant to Rule 18(a)–(d), RLPR. Reinstatement is conditioned on satisfaction of continuing legal education requirements, *see* Rule 18(e)(4), RLPR, and successful completion of the written examination required for admission to the practice of law by the State Board of Law Examiners on the subject of professional responsibility. *See* Rule 18(e)(2), RLPR; Rule 4.A.(5), Rules for Admission to the Bar (requiring evidence that an applicant has successfully completed the Multistate Professional Responsibility Examination).

3. Respondent shall pay $900 in costs. *See* Rule 24, RLPR.

So ordered.